Baldwin, Justice.
(Dissenting.) — The common-law definition of a mandamus, which is adopted in this court, is, “ a command issuing in the king’s name, from the court of king’s bench, and directed to any person, corporation or inferior court of judicature, within the king’s dominion, requiring them to do some particular thing therein specified, which appertains to their office or duty, and which the court of king’s bench has previously determined, or, at least, supposes, to be consonant to right and justice.” Marbury v. Madison, 1 Cranch 168.
As the first question which this motion presents is one of the jurisdiction and power of this court to grant the writ prayed for in this case, it will be following the rule established, to consider it first (3 Cranch 112 ; 5 Ibid. 221 ; 10 Wheat. 20 ; 1 Cranch 91; 9 Wheat. 816), a rule which never ought to be disregarded, where a question of power arises. Though the question of jurisdiction may not be raised by counsel, it can never escape the attention of the court; for it is one which goes to the foundation of their authority to take judicial cognisance of the case ; if they cannot, in the appropriate language of the law, hear and determine it, the cause is coram, non judice, and every act done is a nullity. If I take this case into judicial consideration, this is an assumption of jurisdiction, that necessarily results from a decision whether this is or is not a proper case for a mandamus, for the court to hear and determine the motion on its merits. Their refusal to grant the motion, is not on the ground that they have not. power to consider *2011 but that, on consideration, they reject it. *This is as much an ’ exercise of jurisdiction, as to issue the writ; as, by examining the grounds of the motion, the court assume the power to decide on it, as the justice of the question may seem to require. In my opinion, no new question of jurisdiction ought to be acted on, without an inquiry into the power of this court to grant the motion, or to issue the process. The silent *129 uncontested exercise of jurisdiction may induce the profession to claim it as a right founded on precedent, though the judgment of the court may never have been given on the question of power, or their intention have been drawn to it by the counsel. If, then, process should issue improvidently, and the court should find itself called upon, for the first time, to examine its jurisdiction and power to issue it, when obedience should be refused by the court to which it was directed, and the question, came before us on this return, “tbe court is unanimously of opinion, that the appellate power of the supreme court of the United States does not extend to this court, under a sound construction of the constitution of the United States ; that the writ of mandamus in this case was improvidently issued, under the authority of the 25th section of the judiciary act of 1789 ; that the proceedings thereon in the supreme court were coram nonjudice in relation to this court, and that obedience to its mandate be declined by the courtthis court would find itself in a very unenviable predicament, if, on a careful revision of the constitution and laws, they should.be compelled to sanction the open contempt of their process or decree, by an inferior court, to whom an order had been sent from this high tribunal, which it found itself forced to declare null and void. It is hard to say, which would be most fatal to its influence and authority, the example, or the consequences.
The judicial history of this court presents one instance of such a return, on its records, and another, in which the military force of a state was in actual array, in obedience to a law for opposing the execution of a mandate ; and a very recent occurence might have furnished a third incident, had not a writ of error abated by the death of the party suing it out. The proceedings which have attended the assertion of the unquestionable jurisdiction of the court over eases which, after having been discussed and considered in all their *bearings, have been solemnly decided, afford no uncertain indication of the results to be expected from the exercise of their L power, without discussion or inquiry into its existence, and over subjects on which it may, on examination, be found incapable of acting.
When questions of jurisdiction arise, they must be settled by a reference to the constitution and acts of congress. All cases embraced within the judicial power of the government, are capable of being acted upon by the courts of the Union. Those on which the original jurisdiction of this court can be exercised are defined, and cannot be enlarged. 6 Wheat. 395, 396, 399. It has no inherent authority to assume it over any others, and congress are incapable of conferring it by law. 1 Cranch 173. Where the constitution has declared the jurisdiction shall be original, congress cannot give it in its appellate form, and vice versé. Marbury v. Madison, 1 Cranch 174 ; 6 Wheat. 399 ; 9 Ibid. 820, 821. Though the courts of the United States are capable of exercising the whole judicial power, as conferred by the constitution ; and though congress are bound to provide by law for its exercise, in all cases to which that judicial power extends; yet it has not been done, and much of it remains dormant for the want of legislation to enable the courts to exercise it, it having been repeatedly and uniformly decided by this court, that legislative provisions are indispensable to give effect to a power, to bring into action the constitutional jurisdiction of the supreme and inferior courts. 5 Cranch 500 ; 1 Wheat. 337 ; 6 Ibid. 375, 604 ; 9 Ibid. 819-21 ; 12 Ibid. 117-18.
*130 These principles remain unquestioned. They have long been settled, as the judicial exposition of the constitution, on solemn argument and the gravest consideration ; and they are binding on all courts and judges. I shall ever be found among the last to oppose my opinion, in opposition to the results of the deliberate judgment of the highest judicial tribunal, when thus formed. They bind my faith, even though the reasons assigned might not carry conviction to my understanding. We must respect the solemn decisions of our predecessors 'and associates, as we may wish that those who succeed us should respect ours ; or the supreme law of the land, so far qs .. depends *on judicial interpretation, will change with the change of ’C judges. There may he exceptions to this rule. When they do occur, my hope is, that my reasons for a departure will be found in the great principles of the government, which meet with general assent in their adoption, though the most able and upright may differ in their application. But in any cases which have arisen, or may arise, in which the jurisdiction and power of the court over the subject-matter of the parties is not questioned by counsel and deliberately considered by the judges, or should be unnoticed in the opinion of the court, I cannot acknowledge it as an authority, affording a rule for my decision, or a guide to my judgment. Such a decision ought neither to control my reason, or settled conviction of pre-existing rules and principles of law.
These remarks are deemed proper, as there are some cases in which writs of mandamus have been issued, under circumstances such as have been refered to, or refused on the merits ; but “the question of jurisdiction was not moved, and still remains open,” according to the rule -laid down by this court in Durousseau v. United States, 6 Cranch 307, on a question whether a writ of error could issue from the supreme court to the district court of Orleans : and by the Chief Justice, in alluding to the case of the United States v. Simms, 1 Cranch 252, “no question was made in that case as to the jurisdiction ; it passed sub silentio, and the court does not consider itself as bound by that case.” 6 Cranch 172.
These are the principles on which I shall examine the question of jurisdiction. The first inquiry then will be, has this court, by law, the power to issue a mandamus to a circuit court to sign a bill of exceptions, under the 13th and 14th sections of the judiciary act, which have been relied on as authorizing it ? So far as this act gives the power to issue a mandamus to executive officers, they have solemnly declared the law to be unconstitutional and void, and that the power does not exist. It being considered by the court to be an exercise of original jurisdiction, it remains to inquire, whether it can be issued to any courts appointed uftder the authority of the United States ; and if so, in what cases ?
This power is defined, in Marbury v. Madison, 1 Cranch 175, in these , wor<ls : “t0 enable this court, then, to issue a *mandamus, it must -I be shown to be an exercise of the appellate jurisdiction, or to be necessary to the exercise of appellate jurisdiction. It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause.” In the United States v. Schooner Peggy, 1 Cranch 110, we are furnished with this as the judicial definition : “ it is, in the general, true, that the province of an appellate court is only to inquire whether a judgment when rendered is erroneous *131 or not. That case furnished an exception in these words : “ but if subsequent to the judgment, and before the decision of the appellate court, a law intervenes and .positively changes the rule which governs, the law must be obeyed, or its obligation be denied.” In McClung v. Silliman, they lay down the same rule: “the question before an appellate court is, was the judgment correct, not the ground on which the judgment professes to proceed.” 6 Wheat. 603. Appellate jurisdiction being thus defined, its source can only be found in the constitution which confers it, both as to law and fact, with such exceptions and under such regulations as the congress shall make (1 U. S. Stat. 18), and the judiciary act which makes these exceptions and regulations. The 13th seption provides, that the supreme court shall have apipellate jurisdiction from the circuit courts, and the courts of the several states in the cases hereafter specially provided for. These are defined in the 22d section, as to the circuit courts, and in the 25th section, as to the state courts. (Ibid. 84, 85.)
This court, from its first organization until this time, have held that this enumeration of the cases in which it had appellate jurisdiction, was an exclusion of all others. 1 Cranch 174-6 ; 3 Ibid. 172 ; United States v. Moore, 6 Ibid. 313-14, 318 ; 7 Ibid. 32, 44, 287, 108, 110 ; 6 Wheat. 603 ; 9 Ibid. 820-21, 19 ; 12 Ibid. 131-33, 203. The general principle the court have acted on is this: “ that they imply a legislative exception from its ap>pellate constitutional power, in the legislative affirmative description of these powers.” 6 Cranch 314. But if the appellate jurisdiction of this court is described in general terms, so as to comprehend the ease, and there is no exception or regulation which would exclude it from its general provisions *(as in Wilson v. Mason, 1 Cranch 91, which was a writ „ of error to the district court of Kentucky, on cross-caveats, for the L same tract of land), or if it was the obvious intention of the legislature to give the power, and congress have not excepted it, as on the question which arose in the ease of Durousseau (6 Cranch 312, 318), whether this court could issue a writ of error to the district court of Orleans, they declared it “ to be the intent of the legislature to place those courts precisely on the footing of the court of Kentucky in every respect, and to subject their judgments in the same manner to the revision of the supreme court,” and therefore, gave the law of 1804 (page 809) a liberal construction, s. p. Cohens v. Virginia, 6 Wheat. 400.
But where the law of 3 803 authorized a writ of error from the circuit to the district court, and omitted to provide one from this court to the circuit court, it was held not to be within its appellate jurisdiction (United States v. Goodwin, 7 Cranch 108-10), though the law giving this jurisdiction to the supreme court authorized appeals to the supreme court from the circuit court, from all final decrees and judgments rendered, or to be rendered, in any circuit court, or any district court having circuit court jurisdiction, in any cases of equity, or admiralty or maritime jurisdiction, prize .or no prize, where the sum in controversy exeeds $2000 (2 U. S. Stat.- 244) ; and the 22d section of the judiciary act authorized it on judgments of the circuit in civil actions, in cases removed there by appeal from' the district courts. This too was ah action of debt, and the sum in controversy $15,000 ; but it being on a writ of error from the circuit court, and not an appeal, in the words of the 22d- section, this court gave -it its *132 liberal construction, which had been settled in the case of Wiscart v. D'Auchy, cited by Judge Washington in delivering the opinion of this court in Goodwin’s Case. “An appeal is a civil-law process, and removes the cause entirely, both as to law and fact, for a review and new trial; a writ of error is a common-law process, and removes nothing for a re-examination but the law.” This statute observes this distinction. 7 Cranch 110-11; 3 Dali. 324.
These seem to me to be the only two cases in which the ^appellate jurisdiction of the supreme court can be exercised — appeals and writs of error. This corresponds with the definition given by the court itself, as as to its own powers, and the strict construction which they have (with the two excepted cases) given to the 22d and 25th sections, which are in their terms confined to final judgments and decrees of circuit and state courts, and these are the only cases, where this court have ever exercised appellate jurisdiction. They have uniformly refused, where the judgment or decree was not final (3 Wheat. 434, 601 ; 6 Ibid. 603 ; 12 Ibid. 135), and it cannot well be contended, that a refusal of a circuit court to sign a bill of exceptions, is a final judgment or decree, or that it partakes in any degree of the character of either. The jurisdiction of circuit courts over causes removed from state courts, is considered as appellate. But the time, the process, and the manner, must be subject to the absolute legislative control of congress. 12 Wheat. 349. The same may be said of the jurisdiction of this court over causes sent from the circuit court, on a certificate of division; but this is by a special provision of the law of 1802 (2 U. S. Stat. 139), wb'ch has been construed with the same strictness as the act of 1789. 6 Wheat. 547 ; 10 Ibid. 20 ; 12 Ibid. 132 ; 6 Ibid. 363, 368.
The writ of mandamus contains no order to remove a cause or any proceedings therein to the court issuing it, nor has it that effect. The cause remains in the court below, whether the writ be obeyed or not; the sole object being to compel them to act on the matter themselves, not to remove it for revision. That can only be done by writ of error or appeal. These considerations make it evident, that the issuing a mandamus is not only not an exercise of appellate jurisdiction, but wholly different in its nature, object and effect. It was so considered in this court, in the case of McIntire v. Wood, 7 Cranch 499, 500, in which it was decided, “that the power of the circuit court to issue the writ of mandamus is confined exclusively to those cases, in which it may be necessary to the exercise of their jurisdiction and that cannot be the exercise of appellate jurisdiction,'which, in this case, and in Marbury v. Madison, the court consider as a case wholly distinct. A mandamus being a writ to *compel the performance of a ministerial •* act by a judicial officer, is not, and cannot be a subject-matter for the cognisance of an appellate court, which acts onty on the judicial acts, the judgments and the decrees of inferior courts. In the United States v. Lawrence, 3 Dall. 42, 45, 43, it was unanimously decided, that this court could not issue a mandamus to a district judge, acting in a judicial capacity; that they had no power to compel a judge to decide according to any judgment but his own. So, in 1 Cranch 171, where the head of a department acts in a case in which executive discretion is to be exercised, in which he is the mere organ of executive will, it is again repeated, that any application to control in any respect his conduct would be rejected, without hesitation. In McCluny v. Silliman (2 Wheat. 369), it was determined, that this court *133 had not jurisdiction to issue this writ to the register of a land-office, where it had been refused by the highest court of the state in which it was located ; and in the same case, in 6 Wheat. 598, it was distinctly decided, that the power existed neither in the circuit nor supreme court; and all the principles herein stated were re-affirmed and finally settled. If judicial authority is to be respected, it is useless to pursue this branch of the inquiry any further.
I think, then, that the issuing of a mandamus by this, or a circuit court, is not an exercise of appellate jurisdiction. There seems to be no judicial opinion in favor of the affirmative of the proposition, and the cases referred to have been decided on the true construction of the 13th section of the judiciary act, which declares, “ that the supreme court shall have appellate jurisdiction from the circuit courts of the several states, in cases specially hereinafter provided for.” This is a distinct clause, and does not include the power to issue a mandamus, as an act of appellate jurisdiction.
The next clause giving this power is, “ and shall have power to issue writs of prohibition to the district courts, when proceeding as courts of admiralty and maritime jurisdiction, and writs of mandamus, in cases warranted by the principles and usages of law, to any courts appointed, or persons holding office, under the authority of the United States.” This is an express declaration of congress, that the jaower of this court to issue a mandamus is not conferred as appellate jurisdiction, in the *cases specially pro-[*208 vided for in the subsequent part of the law, but only in cases warranted by legal principles and usages, not referring to the constitution and laws of congress, but, as will appear hereafter, to the principles and usages of courts of common law. For it cannot be the sound construction of this section, that the power to issue a mandamus, in a case not mentioned in the law, can be raised by implication, in a case not within the express power given in a subsequent clause of the same section.
The issuing this writ not then being an act of appellate jurisdiction, I now come to the examination of the second branch of the proposition laid down by the court in Marbury v. Madison. Is the issuing of this writ within the 14th section of the judiciary act, which provides, “that all the before-mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and ail other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law ?” The words and evident meaning of this law carry its construction on its face. It enumerates two writs, but does not mention a mandamus. The reason is obvious ; that had been provided for in the preceding section : congress could not have foreseen, in 1789, that any part of their legislation on the subject of mandamus would have been declared unconstitutional and void in 1803, and the decision in Marbury v. Madison can have no bearing on the 14th section. It must be construed as if the powers conferred in the preceding section had been constitutional, and in full exercise by this court, to the extent named in the law : that is, to every court appointed, and to all persons holding office, under the authority of the United States, in all cases warranted by the usages and principles of law. This is certainly an express and plenary power, ample to embrace a case where the power was necessary to exercise the jurisdiction of this court. It took away the necessity of a mandamus, under the power given in the 14th section, and left it • ithout *134 any application to such a ease as the present, if the mandamus was warranted by the principles and usages of law ; and if it was not so warranted, * . then it is excluded by this section. ^Besides, the 13th section gives ^ J the power expressly to issue this writ by name ; the 14th gives it only by implication. I do not, feel at liberty to reject a power expressly delegated, and seek for one by mere implication and construction, taken from a subsequent part of the same law, without a violation of the well-settled principles of construing statutes, and the very words of this. The authority to issue any other writs than scire facias and habeas corpus is confined to those “ not specially provided for by statute a mandamus was provided for by the preceding section of the same statute, and therefore, was not within this authority. The same rule of construction which this court has applied to’ the 13th, must be carried to the 14th, section ; and the grant of an affirmative power, in a specified case or class of cases, excludes all others, according to the cases before cited.
Construing these two sections, then, as if the power conferred by both were valid, it is apparent, that the 14th section could not have been intended to embrace a mandamus to a court of the United States : the very 'case provided for by that part of the 13th section, which has never been declared unconstitutional. It thus appears clearly to my mind, that the decisions of this court, and the act of 1189, negative both parts of the proposition, which is laid down in 1 Cranch 115, as necessary to make out a power in this court to issue, a mandamus to a court of the United States. But if the affirmative of this proposition is admitted, the law requires something more ; the power does not arise, unless in eases warranted by the principles and usages of law. Is this such a case ?
This court has repeatedly declared their sense of the meaning of these terms in acts of congress, organizing and conferring powers upon the federal courts. They do not apply to the usages, principles and practice of the state courts, but to those of common law, equity and admiralty jurisdiction of England. There was an obvious reason for this : most of the states had a local common law. The English common law was a system which was intended to be applied to the exercise of the judicial power of the courts of the Union, who were vested with an appellate jurisdiction over the highest courts of every state, and the necessity is obvious, of proceeding *9 ml *acool'ding to uniform principles and usages well known and defined -I on the subject of its powers and jurisdiction. Bodley v. Taylor, 5 Cranch 222 ; Robinson v. Campbell, 3 Wheat. 222 ; Ex parte Kearney, 1 Ibid. 45 ; Fullerton v. Bank of the United Slates, 1 Pet. 613 ; Bank of the United States v. Halstead, 10 Wheat. 56.
The principles and usages of law, which warrant the issuing of this writ, are clearly laid down in 1 Cranch 168-9: “whenever there is a right to execute an office, perform a service, or exercise a franchise, more especially, if it be a matter of public concern, or attended with profit, and a person is kept out of possession of such right, and has no other specific legal remedy, the court ought to assist by mandamus, upon reasons of public policy, to preserve peace, order and good government; this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one.” These are the nerds of the court of king’s bench adopted by this. They farther *135 observe: “ still to render the mandamus a proper remedy, the officer to whom it is to be directed must be one to whom such writ may be directed ; and the person applying for it must be without another specific or legal remedy ; both must concur.” 1 Cranch 169.
It is a prerogative writ (Com. Dig., tit. Mandamus, A), issuing from the court of king’s bench, by virtue of its general and supervising powers (3 Burr. 1265, 1267), on motion, and for cause shown. This is a court of special jurisdiction, limited in the exercise of its powers to specified cases ; it has no prerogative powers, and can issue no prerogative writs ; it possesses no general supervisory powers over inferior tribunals ; and can in nó case grant a mandamus, on its inherent authority. 6 Wheat. 600. Its implied powers are to fine for a contempt, imprison for contumacy, enforce the observance of order. 7 Cranch 34. It may regulate process and practice, but under' an authority given by law. 10 Wheat. 22, 55, 64. This, then; is not a court which, by the principles and usages of the common law, can issue a mandamus; not having a general superintending jurisdiction like the king’s bench ; but having no power to do it, unless by express and delegated authority. In New York, the supreme court has claimed this *power, on a mandamus to an inferior court to sign a bill of excep[*211 tions ; but the reason assigned is, “ we have the general superintendence of all inferior courts, and are bound to enforce obedience to the statutes, and oblige subordinate courts and magistrates to do those legal acts which it is their duty to do. The court admits, however, that so late as 1810, the application is entirely new ; that no instance appears of such a writ issuing out of the king’s bench, when an inferior court refused to seal a bill of exceptions ; and if complaint should be made against this court or one of its judges, for refusing to seal a bill of exceptions, then the writ must, ex necessitate, come from chancery, if anywhere ; but in no other case can it be indispensable. Sikes v. Ransom, 6 Johns. 279-80. The writ founded on and reciting the statute of Westm. II. (13 Edw. I., c. 31), is to be found in Ruffhead 99, 100, commanding the judges to put their seals to the exceptions, as is prescribed by the statute aforesaid, and that on pericido quod incumba nullatores. The writ is set forth at large in the Registrum Brevium 182, title Brevia de Statuto, and was devised to enforce obedience to the statute made out by the court of chancery: it is issued on special application, founded on the right of the crown to compel its officers to pay obedience to the statutes. It is a sort of prerogative writ — a mandatory writ. The judges to whom it is directed are supposed by the writ to have done wrong. They may obey the writ, by sealing the exceptions ; or they may make a special return, which must be made to the king in chancery, and can be made nowhere else; and in issuing the writ, the court of chancery acts as much judicially as the court of king’s bench does, in granting a mandamus. If the judges make a false return, an action may be brought against them. 1 Sch. & Lef. 78-9. Lord Redesdale quashed the writ which had been issued to the court of king’s bench, by the decision of the court. 1 Sch. & Lef. 75, 79.
In the Rioters' Case (1 Vern. 175), a motion was made, to grant a mandatory writ to the chief justice of the king’s bench, and they produced a precedent where, in like cases, such a .writ had issued out of chancery to the judge of the sheriff’s court of London ; “but the lord keeper denied *136 the motion, for that the precedent they produced was to an inferior court, and he *could not presume but the chief justice of England would J do what should be just in the case ; for possibly, you may tender a bill of exceptions which has false allegations and the like, and then he is not bound to sign it, for that might be to draw him into a snare ; and said, if they had wrong done them, they might right themselves by an action on the case.”
In Bridgman v. Holt, Show. P. C. 111, a writ of error to the court of king’s bench was pending in the House of Lords; an order was prayed for to the judges, to seal a bill of- exceptions (which the court had refused at the trial), to the end that the said case might, as by law it ought, come entirely before their lordships for judgment, &c. The house ordered copies of this petition to be given to the judges, that they should put in their answers in writing. They replied, by protestation and saving their rights, declaring, “ so that if the pretended bill was duly tendered to these respondents, and was such as they were bound to seal, these respondents are answerable for it by the course of the common law, in an action to be brought on the statute of Westm. II., c. 21, which ought to be tried by a jury of twelve honest and lawful men of England, by the course of the common law, and not in any other manner.” “ And the respondents further show, and humbly offer to your lordships’ consideration, that the petition is a complaint in the nature of an original suit, charging these respondents with a crime of a very high nature ; in acting contrary to the duty of their office, and so altogether improper for your lordships’ examination or considera'ion, not being any more triable by your lordships than every information or action for breach of any statute law is ; all which matters are by the common law, and justice of the land, of common right, to be tried by a jury. And the petition is wholly of a new nature, and without any example or precedent, being to compel judges, who are, by the law of the land, to act according to their own judgments, without any constraint or compulsion whatsoever, and trenches upon all men’s rights and liberties, tending manifestly to destroy all trials by jury. And it is further manifest, that this complaint is utterly improper for your lordships’ examina*2131 ^011’ ^01' your *lordships cannot apply the proper and only remedy J which the law hath given the party in this case, which is by awarding damages to the party injured (if any injury be done), for these are only to be assessed by a jury. And they, these respondents, are so far from apprehending they have done any wrong to the petitioners in this matter, that they humbly offer, with your lordships’ leave, to waive any privilege they have, as assistants to this honorable house, and appear gratis to any suit which shall be brought against them in Westminster hall, touching the matter complained of. And they further, with all humility, offer to your lordships’ consideration, that as they are judges, they are under the solemn obligation of an oath to do justice (without respect to persons), and are to be supposed to have acted in this matter, with and under a due regard to that sacred obligation ; and therefore, to impose anything contrary upon them, may endanger the breaking of it, which they humbly believe your lordships will be tender of. And they further humbly show to your lordships, that by a statute made in 25 Edw. III., c. 4, it is enacted, that from thenceforth none shall be taken by petition or suggestion to the king or his *137 souncil, unless by indictment or presentment of good and lawful people of the neighborhood, or by process by writ original, at common law ; and that none shall be put out of his franchise or freehold, but by the course of the common law. And by another statute in the 28th of Edw. III., c. 4, it is expressly provided, that no man shall be put out of his lands or tenements, or imprisoned or disinherited, but by due process at law. And by another statute, made in the 42d Edw. III., c. 3, it is enacted, that no man shall be put to answer, without presentment before justices, or matters of record on due process and original writ, according to the old law of the land. And the respondents further say, that inasmuch as the petition is a complaint in the nature of an original cause, for a supposed breach of an act of parliament, which breach (if any be) is only examinable and triable by the course of the common law, and cannot be in any other manner; and is, in the example of it, dangerous to the rights and liberties of all men, and tends to the subversion of all trials by jury ; these respondents *eonsider them- . selves bound in duty (with regard to their offices, and in conscience *- to the oaths they have taken), to crave the benefit of defending themselves touching the matter complained of by the petitioners, by the due and known course of the common law ; and to rely upon the aforesaid statutes, and the common right they have of free-born people of England, in bar of the petitioners any further proceeding upon the said petition; and humbly pray to be dismissed from the same.”
This is the language of the judges of the court of king’s bench to the highest court in England. I believe it to be in the true spirit of the principles and usages of the common law. It was boldly held to a court composed of the aristocracy, the clergy, the judges of the common pleas, and barons of the exchequer ; in which the lord chancellor presides. It was a manly defiance of their power, and fearless appeal to their common right as free-born people of England, the common law, the guardian mother of liberty wherever adopted. The counsel for the application did not controvert a principle asserted by the judges, and did not show a precedent: the House of Lords did not grant the writ, and the case ends with four blank lines containing, “ and afterwards, * * * ” The blank would have been filled up, if, in so solemn a contest, the arm of power had prostrated the law of the land.
The principles of the judges are a part of that great system which our ancestors introduced, and on which our best institutions are built. They are, in my opinion, a part of the common law of every state and of every common-law court, state or federal, safe guides to the highest, or its component members sitting in a circuit court. The judges of king’s bench humbly offered to their lordships’ consideration, that they acted under oath, the breaking of which might be endangered, if they obeyed their order. If this court asserts and exercises this power, by directing writs of mandamus to every court over which they have appellate jurisdiction, an answer might a second time be entered on our records, in terms of protestation ; not offered in all humility to our consideration, whether the breaking of their oaths should be endangered by obeying; we might expect disobedience to the *writ, and contempt of powerless, defied jurisdie- ' tion. I hope never to see the judges of the highest court in a i republic afraid, when eir judgment tells them that they stand on the *138 written constitution, and law of the nation, and their duty is called into action on a proper occasion, to assert and maintain those great principles of jurisprudence avowed in the highest court in a monarchy, by judges of a subordinate one, under a constitution unwritten, and which could give no control to a legislative power-, which was omnipotent. The right of disobedience to a writ from a superior court to an inferior one, is not alone to be found in the courts of a foreign country. That it may and ought to be exercised by a district court of the United States, to a writ from the circuit court, which they have no power to issue, has received the deliberate sanction of this court. “ The court deem it proper to take some notice of the mode of proceeding, for removing- this case from the district to the circuit court; it is believed to be novel in the practice of the courts of the United States, and it certainly wants the authority of law to sanction it. There is no act of congress which authorizes a circuit court to issue a compulsory process to the district court, for the removal of a cause from their jurisdiction, before a final judgment or decree is pronounced. The district court, therefore, might and ought to have refused obedience to the writ of certiorari issued in this case by the circuit court; and either party might have moved the court for a procedendo, after the transcript of the record was removed into the circuit court, or might have pursued the cause in the district court, in like manner as if the record had not been removed. Patterson v. United States, 2 Wheat. 225-26 : opinion of the court, delivered by Mr. Justice Washington.
The circuit court have unquestioned appellate jurisdiction over the dis- ' trict court. The 14th section of the judiciary act authorizes all the courts of the United States to issue all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdiction, agreeable to the principles and usages of law. The writ of certiorari is not specially provided for by any statute : it' is a common-law writ issued by *2161 suPer'or appellate courts to inferior ones, and by them to *magisJ trates ; it is the peculiar and appropriate process for ordering a record or proceeding to be certified to a superior tribunal. But being novel in practice, authorized by no act of congress, it ought to be resisted — it was a nullity. The record, though removed in fact to the circuit, remained in the district court in law, and their power to hear and determine it remained as full as before the writ was obeyed. It is not necessary for me to make a detailed application of that case to this ; it applies to all cases where process is applied for to a court which has no power to issue it. In a new case, the rule laid down by the chancellor in 1 Vera. 170, is a sound and safe one : “but the lord keeper told him, that though he had the custody of the great seal, yet he would make no use thereof, but according to the course of the court.’'
Questions of jurisdiction and power ought neither to be sought nor avoided ; a great one has arisen in a very small case, but such cases generally lead to the development of the mighty principles which subvert and found governments. We are asked to issue a mandamus to the circuit court of New York, under circumstances which would not justify one to a county court. This part of the case was very properly submitted, without argument, and if the ajiplication could have been rejected on its merits, without jurisdiction to hear and determine, “ oyer and terminer,” the mer *139 its, and to refuse or issue the writ, according to the justice and law of the ease, I should have required no consideration ; but as the existence of jurisdiction must precede its exercise, I have been forced to the investigation of this case, which, simple as it is on the merits, necessarily involves principles which are the foundation and corner-stones of the judicial department of this government.
I am abundantly satisfied, that' the judicial power does not extend to this case ; that the constitution and acts of congress do not authorize a mandamus from this to a circuit court, to sign a bill of exceptions ; that it is warranted by no principle or usage of law, either the common law of this country or of England ; that the issuing of it is neither an exercise of appellate jurisdiction under the 13th, nor necessary to the exercise of the jurisdiction of this court, within the provisions of the 14th section of the judiciary act; that *if the writ can be issued at all, it is specially pro- . vided by statute, and can in no case issue from this court, as called L for by this motion, agreeable to the principles and usages of law. This court have repeatedly decided, that this means the common law of England, as administered in her courts of law and equity. In tracing their course, since the adoption of the statute of Westminster, in 1285, I find, that the court of king’s bench, the only court in the kingdom which, by virtue of its high general prerogative and superintending jurisdiction, can issue the high prerogative writ of mandamus to any court of record, has never issued one to sign a bill of exceptions ; that such a writ is not an exercise of appellate jurisdiction, or necessary to it, but of original inherent power ; that the power to issue it to the court of king’s bench was solemnly denied to the highest appellate court in England ; that the mandatory and kind of prerogative writ, which has been devised and founded on the statute of Westminster, as the only process by which its provisions are enforced, issues from the king in chancery, on application to the keeper of his conscience ; and that the high court of Chancery has no appellate jurisdiction over any court of record ; that the writ, when issued, is not in virtue of appellate jurisdiction in that court, nor as necessary to its exercise. These are the only cases in which, according to the solemn opinion of this court in Marbury v. Madison, it can issue the writ ; thus adjudging and declaring that the union of the legislative and judicial power of this government was incompetent to authorize one to the secretary of state, in a case appropriate for its exercise, and warranted by the principles and usages of the common law, as defined by Blackstone and Lord Mansfield, and adopted by this court. In the absence of a solitary precedent in England, since the 13 Edw. I., or in this court, from its first organization, although this statute forms a part of the law of every state court of record, and of the federal courts in civil cases, which come here for revision, I am constrained to withhold my. assent to the exercise of any power over the subject-matter of this motion. It seems to me, to be as inconsistent with our own decisions, as with the principles and usages of the common law.
There is another objection to the exercise of this power in this case, equally fatal. Two things must concur to authorize *a mandamus. The officer to whom it is directed must be one to whom, on legal [*218 principles, such writ can be issued ; and the person applying for 1. must be without any other specific or legal remedy. The cases referred to clearly *140 negative the first requisite. It cannot be issued to a judge of the highest court in the land ; to a judge of an inferior court, to perform a judicial act, or compel him to decide according to any judgment but his own; to an executive officer who may act or not according to his own discretion, or is subject to the discretion of another.
As the matter contained in the bill of exceptions forms a part of the record, the supreme court must take it as true. It admits of no contradiction by any proof. The signing of it by the circuit court is not a ministerial act; but is in its nature judicial, relating to the admission or rejection of what is offered in evidence, or matter of law given in charge to the jury or withheld by the court. An order from a superior to an inferior court, to make that a part of the record, which they do not feel it their duty to do, is in effect to compel them to decide by the judgment of others, and not according to their own.
The next requisite which the supreme court say is necessary, is manifestly wanting. There is, by the principles and usages of the common law, a specific legal remedy provided for the very case, by a special writ from chaneery, returnable before the king in chancery, reciting the mandatory parts of the statute of Westminister. Though no act of congress authorizes this writ to issue from any court, there is a specific and legal remedy, by an action on the statute for a false return, and a special action on the case, if the judges refuse to seal the bill of exceptions, when duly taken and tendered. This abundantly appears by the writ in the register, and the opinion of Lord Chancellor King, in 1 Vernon ; of Lord Redesdale, in 1 Seh. & Lef.; of the court of king’s bench in Bridgman v. Holt ; of Justice Buller in his Nisi Prius 316 ; and of the supreme court of New York, in 6 Johnson : and in the absence of even a dictum to the contrary. These opinions and cases must be taken as clearly showing the law to be well settled, that these remedies are both specific and legal; the writ in the register is alone sufficient to show this. Lord Coke declares original writs to be the foundation of the law. (Preface to 8th Reports.)
*Ns the absence of such remedy forms a part of the definition of the only cases in which, according to the doctrine of the court of king’s bench, adopted in 1 Cranch 168-9, by this court, a mandamus can issue ; the opinions of both coincide in declaring this not to be such a case.
It may be proper to notice some cases from which it may be inferred that these principles have not been uniformly adhered to. In the lessee of Martha Bradstreet v. Daniel Thomas, 4 Pet. 102, an application was made to direct a mandamus to the district judge of the northern district of New York, to sign a bill of exceptions ; a rule to show cause was granted at the January term 1829, but discharged at the next term, on the merits. The question of jurisdiction was not moved, and passed sub silentio; thus affording, in the language of the court in 6 Cranch 317, and of the chief justice, in 3 Cranch 172, a sufficient answer to the supposed authority of Mrs. Bradstreefs Case.
The same answer applies to the United States v. Peters, 5 Cranch 115, 134, in which a mandamus was issued to the district judge of Pennsylvania, to order an attachment in the celebrated case of Ohnstead. No objection was made to the writ; and the cause was submitted, without argument, for reasons apparent in the return of the judge, who had previously rendered a *141 final sentence. The case of Livingston v. Dorgenois was a writ of error to the district court of Orleans; the counsel for the appellant dismissed his writ of error, without the opinion of the court having been delivered. He then prayed a writ of mandamus nisi, in the nature of- a procedendo, which ■ was granted, without argument or question of jurisdiction. 7 Cranch 557, 589. The writ of procedendo to a district court is within the words of the 13th section of the judiciary act.
The decisions of state courts, deriving their authority from state constitutions or laws, are no test of the powers of the courts of the United States ; nor have their usages or practice ever been adopted by any act of congress or rule of the supreme court, except so far as relates to the federal courts sitting within a state: but as much reliance has been placed on the case in 6 Johns. 278, 280, 1 think proper to observe, that the claim of the supreme court in that case was expressly *founded on their general controlling supervisory power over all inferior courts and tribunals, *- under the laws of New York, placing them on the same footing as the court of king’s bench in England ; a power not pretended to exist in this. If, however, this case is any authority, it is directly opposed to the power which we are now called on to exercise. If, say that court, a complaint was made against them, or one of its judges, for refusing to sign a bill of exceptions, the writ must, ex necessitate, come from chancery, if anywhere ; but in no other case can it be indispensable. If this assertion by that court of its power to issue this writ to any inferior court, for such purpose, and for such reasons, as they assign, is to be followed in this court as a safe guide to its powers, under the constitution and laws of the United States, then we may, as representing the court of king’s bench in its high perrogative character, issue a perrogative mandamus to any district court; and as representing the king in chancery, and the chancellor as the keeper of his conscience and the great seal of the kingdom, issue the special mandatory sort of writ prescribed by the statute of Westminister. Those who feel themselves invested with such authority, as part of the judicial power of the government, must exercise it; but for myself, I must disclaim it, as neither conferred by any act of congress, or the principles and usages of the common law. I do not feel justified in adopting them from any state court, acting under state laws and usages ; especially, where that court declares the assertion of the principle to be new, more than thirty years after the federal courts were organ-1 ized. Having no authority, under the 25th section, to revise that opinion, * I am not disposed, extra-judicially, to question its authority in the state where It was pronounced ; but believing it to be contrary to the best established rules and principles of the common law, as well as to the uniform construe- • tion which this court has given to the 13th and 14th sections of the judiciary " act, in its general principles, I cannot adopt them. Though no one respects more than myself the adjudication of that court, yet I should be utterly ‘ wanting in that which is due to the constitution, the acts of congress, and the course of this court for more than forty years, by making a state decision the standard of our constitutional powers.
*1 have thus searched among the fountains, and consulted the written oracles of the common law. The streams of justice which *• have flowed from the one, have run in one unbroken current for 546 years, without such a mandamus as this seen floating even on the surface. The *142 responses from the other are the voice of the law, speaking through all ages, in one unvarying tone ; delivering the results of human wisdom, developed in principles, matured, digested, explained, enforced and supported during five centuries, amidst all the conflicts of party vengeance, civil war and regal oppression. But in reply to the question, has such a writ as this now asked for ever formed a part of the principles or usages of the common law of England, the response through all time has been the same : it is not the lineal descendant of the venerated mother of our best institutions. I have drawn largely on the adjudications of this high tribunal; and sought in the principles established by the great men who have formed an embryo system of American jurisprudence, that will not cower before any which has required centuries to build up iu Europe. There, too, I find no writ issued, no power asserted, to command a circuit court to seal a bill of excejjtions. Without a rule to bind my faith, a decision to influence my judgment, a reason to enlighten my understanding, and without one precedent to 'justify me in disobeying the settled convictions of my conscience, I have a plain course to take, a plain line to guide me in the path of duty. Believing that the law of the land does not authorize this writ, that it is the exercise of a power, neither inherent nor conferred, I am compelled to resist it; my judgment has been formed on the constitution and laws of the Union, the common law of England, of all the states and the nation, and cannot be surrendered to human authority. I am well aware of the weight of that against which, on several questions of jurisdiction, my duty has compelled me to stand alone, and may again compel me ; it is against odds truly fearful; but to act against my conscience and conviction of duty, would be more fearful still. Internal calm and ¡mace of mind are too precious, at my time of life, to be impaired by any considerations ; while all is at ease within, it little *ooo"i matters bow the storm rages without. Judges do not *sil on cushions of down, while administering the supreme law of the land in this court; their constitutional powers are not like those of the other departments of the government; though the case arises which brings them into existence, their exercise is discretionary. 6 Wheat. 404. But with us, power and duty to bring it into action are inseparable ; whenever a case calls for it, the call is imperative. Questions of jurisdiction are important in all governments, but most powerful in this. They must be approached with caution, and examined with deliberation ; but cannot be avoided. When made by counsel, or suggested by ourselves, we must examine them with the greatest assiduity; when not aided by the researches, and enlightened by the display and conflict of the talent and intelligence of the bar, and without the responsibility of even an argument, this court is called on to assert a power, which in the forty-two years of its existence it has never exercised, that power growing out of a statute under which it has never been exercised, during the more than five centuries which have elapsed since its enactment, even in the country in which it was first adopted ; to be exercised by a prerogative writ, which can be granted only by one high prerogative court in England, in which the king is presumed to be present, and the proceedings to he “coram domini regis ubicumque fuerimus in Anglico which can ■ issue the writ only by virtue of. its great supervisory power over all inferior courts, magistrates, officers and corporations, to foi’ce obedience to the statutes, and compel them to do those legal acts *143 which it is their duty to do ; I must follow my own judgment, and dissent in the threshold : obsta principiis — stare decisis.
The importance, of the principles involved in this case, not only as they bear on the jurisdiction of this court in issuing prerogative writs to the inferior courts of the United States, but also on the appellate power conferred on them by the constitution and the 25th section of the judiciary act over the state courts, has made it a high duty to give this application a most deliberate examination. Compelled to dissent, I was bound to give my reasons, and cite the authority on which my judgment was formed. Another reason is equally imperious. Sitting here, or elsewhere, it is my duty to exercise all the powers given by the constitution, which the ^legislation of congress has authorized the court to bring into action, ,. on the cases which may properly arise, and call for their application L ^ and to enforce the judgments and decrees of either tribunal of which I am a member, by all the process and physical means which the laws have placed at its command, and on the failure of these, to apply to the executive to see that the laws are executed; I approach all questions of power and jurisdiction with caution, and shall stop in the beginning, unless satisfied that the constitution and laws empower and enjoin it as a duty to proceed and finish what we can begin. Fully satisfied, that on the discreet exercise of the powers of this court, much of the strength and public usefulness of the government depend, I have no fear that its judgments will ever cease to command the support and confidence of the country, while they are applied only to subjects clearly within the judicial power, according to the laws which regulate their exercise. But I do most seriously apprehend consequences of the most alarming kind, by the extension of its powers, by any analogy to the supreme prerogative jurisdiction of the court'of king’s bench, or a state court, and its application to process hitherto unknown in the history of the jurisprudence of England or this court: Via trita, vice tuta.