## DUROUSSEAU AND OTHERS v. THE UNITED STATES.

———

ERROR to the *district* court of the United States, for the district of Orleans.

This was a suit brought by the *United States* against

The appellate powers of the supreme court of the United States, are gi-

DUROUSSEAU
v.
THE U. S.

ven by the con-
stitution; but
they are limit-
ed and regula-
ted by the judi-
cial act, and
other acts pas-
sed by congress
on the subject.
This court has
appellate juris-
diction of de-
cisions in the
district courts
of Kentucky,
Ohio, Tennes-
see, and Or-
leans, even in
causes proper-
ly cognisable
by the district
courts of the
United States.
To an action
of debt for the
penalty of an
embargo bond,
it is a good
plea, under
the act of con-
gress of the
12th of March,
1808, s. 3. that
the party was
prevented
from relanding
the goods in
the United
States, by un-
avoidable acci-
dent.

*Durousseau and others* upon a bond, given in pursuance of the act of congress of *December* 22, 1807, usually called the *embargo act.* (*Laws U. S. vol.* 9. *p.* 7.) The bond bears date the 16th of May, 1808, and the condition is, that the goods therein mentioned should be "relanded in the United States, at the port of *Charleston,* or at some other port of the United States, *the dangers of the seas excepted.*"

The proceedings in the court below are according to the forms of the civil law, by petition or libel and answer. The libel is in the nature of an action of debt for the penalty of the bond, and the plea is in the nature of a special plea, stating facts which were suppo- sed to be sufficient evidence that the defendants were prevented by the *dangers of the seas* from relanding the goods in the United States.

The answer, or plea, states, that the vessel sailed from New Orleans with *intent* to proceed to the port of Charleston, and that in the due prosecution of her voyage from New Orleans to Charleston, she was; "on the 26th of May, 1808, and on divers days from the said 26th of May till the 1st of June then next fol- lowing, upon the high seas by *unavoidable accident* by force of the winds and waves, *so much* injured and en- damaged, that upon the said 1st day of June, for the preservation of the said vessel and cargo, and the lives of her crew and passengers, *it was found necessary* to put into the port of Havanna to refit the said vessel for her voyage aforesaid; and that *the persons admi- nistering* the government at the said port of Havanna, *by force of arms, and against the will and consent of these defendants,* and of the captain and supercargo of the said vessel, and all other persons having the charge and direction of the said vessel or cargo whatever, *did detain the said vessel and cargo* at the said port of Ha- vanna, and by *superior force did prevent* the said vessel, with her cargo, *from pursuing her said voyage* to the port of Charleston aforesaid, or from going to any other port of the United States, and landing the said cargo therein pursuant to the condition of the said bond, *and did also by force so as aforesaid prevent, and have*

*always hitherto prevented, the said cargo, or any part* DUROUSSEAU *thereof, from being sent in any other manner to the said* THE U. S. *United States and landed therein* pursuant to the condition of the said bond ; and these defendants aver, that the *damages and injuries* aforesaid sustained by the said vessel *were unavoidable,* and by force of the winds and waves ; and that *by reason of the detention,* and continuation thereof, as aforesaid, by superior force as aforesaid, *they could not* at any time heretofore, nor can they yet, *land the said goods, wares and merchandises in the said United States,* pursuant to the condition of the said bond in the said petition set forth, *by, reason whereof, and also by force of the statutes* in such case made and provided, these defendants are, as they are advised, *discharged from the payment of the said sum of money* in the said bond or obligation mentioned, or any pa t thereof; these defendants, therefore, pray, that a jur; may be empannelled to inquire of the facts aforesaid, should they be denied by the United States, and that these defendants may be hence dismissed with their reasonable costs and damages in this behalf most wrongfully expended," &c.

To this answer the attorney for the United States filed a general demurrer, and the court below, without argument, rendered judgment for the United States; whereupon the defendants sued out their writ of error.

*Rodney, Attorney-General,* and *Janes,* for the United States.

Contended, that this court has no jurisdiction, because there can be no writ of error to, or appeal from, the decisions of the *district* court of Orleans.

By the act of congress passed March 26, 1804, entitled an act erecting Louisiana into two territories, and providing for the temporary government thereof, *vol. 7. p.* 117. § 8. it is enacted, that " there shall be established in the said territory a district court, to consist of one judge, who shall reside therein, and be called the district judge, and who shall hold, in the city of Orleans, four sessions annually;" " he shall in all things have *the same* jurisdiction and powers, which are by law

given to, or may be exercised by, the judge of Kentucky district."

By the judiciary act of *September* 24, 1789, *vol.* 1. *p.* 54. § 10. the district court, besides the ordinary jurisdiction of a district court, has "jurisdiction of all other causes except of appeals and writs of error, hereinafter made cognisable in a circuit court, and shall proceed therein in the same manner as a circuit court, and writs of error and appeals shall lie from decisions therein to the supreme court in the same causes, as from a circuit to the supreme court, and under the same regulations."

By the ninth section of the same act the district courts have "exclusive original cognisance of all suits for penalties and forfeitures incurred under the laws of the United States."

Hence, it appears, that writs of error will lie to the Kentucky district court in those causes only in which it acts in the capacity of a circuit court. The word "*therein*," means in causes other than those of which the district courts generally had cognisance under the 9th section of the act.

This court, in the cases of *Clarke* v. *Bazadone*, 1 *Cranch*, 212. and *Bollman and Swartwout*, 4 *Cranch*, 75. disclaimed any appellate jurisdiction not expressly given by law; and by a late act, *vol.* 8. *p.* 21. and *vol.* 9. *p.* 116. extending jurisdiction in certain cases to state judges and state courts, the jurisdiction is given without appeal; which shows that congress are not anxious that there should be an appeal from all the courts to which they have given jurisdiction. There is no appeal from the judge of the district of Orleans in cases where he exercises only the district court jurisdiction. In Kentucky there was no circuit court. The district judge, although he exercised the powers and jurisdiction of a circuit court, yet he did not hold a circuit court. His court was merely a district court. The courts of the United States can exercise no jurisdiction not expressly given by statute.

*3 Dallas,* 337. Although this suit was upon a bond, yet it was in fact a suit for a penalty or forfeiture, like the case of the auctioneer's bond in 2 *Anstruther,* 586, 587.

*DUROUSSEAU
v.
THE U. S.*

This is as much a penalty as if it had been merely declared by the statute without having been put into the form of a bond.

*E. Livingston,* contra.

This court has jurisdiction in consequence of its being the *supreme* court, and the other an *inferior* court. The terms *supreme* and *inferior* are correlative, and imply a power of revision in the superior court.

The judiciary act of 1789 gives a writ of error from the supreme court to the district court of Kentucky, in all cases where a writ of error would lie to a district court from a circuit court, as well as in those cases where a writ of error lies generally from the supreme court to a circuit court. The word "*therein,*" means in that *court,* and not those cases only in which that court exercises the jurisdiction of a circuit court.

The act of congress gives the Orleans judge the same *jurisdiction* and *powers* as are given to the Kentucky judge. If it had been intended to give him the same jurisdiction without limiting his power by the right of appeal, congress would not have used the word *powers.* The *same* powers, means no greater powers; but if the Kentucky judge had limited powers, and the Orleans judge has unlimited powers, the powers cannot be the *same.*

*C. Lee,* same side, cited the case of *Morgan* v. *Callender,* 4 *Cranch,* 370. in which this court decided that it has jurisdiction in cases of appeal from the district court of Orleans. He also suggested the inconvenience which would result from having a *revenue court* in Orleans not subject to the control of the supreme court; and from a difference of construction in the laws re-

specting trade, commerce and revenue in different parts of the territories of the United States.

*Jones*, in reply, observed, that the inconvenience arising from the want of uniformity of decision already exists with respect to all cases under 2,000 dollars value, in which there can be no appeal, or writ of error.

### March 15.

Marshall, Ch. J. delivered the opinion of the court, upon the question of jurisdiction, as follows :

This is the first of several writs of error to sundry judgments rendered by the court of the United States for the territory of Orleans.

The attorney-general having moved to dismiss them, because no writ of error lies from this court to that in any case, or, if in any case, not in such a case as this ; the jurisdiction of this court becomes the first subject for consideration.

The act erecting Louisiana into two territories establishes a district court in the territory of Orleans, consisting of one judge who " shall, in all things, have and exercise the same jurisdiction and powers which are, by law, given to, or may be exercised by, the judge of Kentucky district."

On the part of the United States it is contended, that this description of the jurisdiction of the court of New Orleans does not imply a power of revision in this court similar to that which might have been exercised over the judgments of the district court of Kentucky ; or, if it does, that a writ of error could not have been sustained to a judgment rendered by the district court of Kentucky, in such a case as this.

On the part of the plaintiffs it is contended, that this court possesses a constitutional power to revise and correct the judgments of inferior courts ; or, if not so, that such a power is implied in the act by which the

court of Orleans is created, taken in connection with the judicial act; and that a writ of error would lie to a judgment rendered by the court for the district of Kentucky, in such a case as this.

Every question originating in the constitution of the United States claims, and will receive, the most serious consideration of this court.

The third article of that instrument commences with organizing the judicial department. It consists of one supreme court, and of such inferior courts as congress shall, from time to time, ordain and establish. In these courts is vested the judicial power of the United States.

The first clause of the second section enumerates the ases to which that power shall extend.

The second clause of the same section distributes the powers previously described. In some few cases the supreme court possesses original jurisdiction. The constitution then proceeds thus: " In all the other cases before mentioned the supreme court shall have appellate jurisdiction, both as to law and fact, with such exceptions, and under such regulations, as the congress shall make."

It is contended that the words of the constitution vest an appellate jurisdiction in this court, which extends to every case not excepted by congress; and that if the court had been created without any express definition or limitation of its powers, a full and complete appellate jurisdiction would have vested in it, which must have been exercised in all cases whatever.

The force of this argument is perceived and admitted. Had the judicial act created the supreme court, without defining or limiting its jurisdiction, it must have been considered as possessing all the jurisdiction which the constitution assigns to it. The legislature would have exercised the power it possessed of creating a supreme court as ordained by the constitution;

and, in omitting to exercise the right of excepting from its constitutional powers, would have necessarily left those powers undiminished. The appellate powers of this court are not given by the judicial act. They are given by the constitution. But they are limited and regulated by the judicial act, and by such other acts as have been passed on the subject.

When the first legislature of the union proceeded to carry the third article of the constitution into effect, they must be understood as intending to execute the power they possessed of making exceptions to the appellate jurisdiction of the supreme court. They have not, indeed, made these exceptions in express terms. They have not declared that the appellate power of the court shall not extend to certain cases ; but they have described affirmatively its jurisdiction, and this affirmative description has been understood to imply a negative on the exercise of such appellate power as is not comprehended within it.

The spirit as well as the letter of a statute must be respected, and where the whole context of the law demonstrates a particular intent in the legislature to effect a certain object, some degree of implication may be called in to aid that intent.

It is upon this principle that the court implies a legislative exception from its constitutional appellate power in the legislative affirmative description of those powers.

Thus, a writ of error lies to the judgment of a circuit court, where the matter in controversy exceeds the value of 2,000 dollars. There is no express declaration that it will not lie where the matter in controversy shall be of less value. But the court considers this affirmative description as manifesting the intent of the legislature to except from its appellate jurisdiction all cases decided in the circuits where the matter in controversy is of less value, and implies negative words.

This restriction, however, being implied by the court,

and that implication being founded on the manifest in-
tent of the legislature, can be made only where that
manifest intent appears. It ought not to be made for
the purpose of defeating the intent of the legislature.

Having made these observations on the constitution,
the court will proceed to consider the acts on which
its jurisdiction, in the present case, depends; and, first,
to inquire whether it could take cognisance of this case
had the judgment been rendered by the district court
of Kentucky.

The ninth section of the judicial act describes the
jurisdiction of the district courts.

The tenth section declares that the district court of
Kentucky, "besides the jurisdiction aforesaid," shall
exercise jurisdiction over all other causes, except ap-
peals and writs of error, which are made cognisable in
a circuit court, and shall proceed therein in the same
manner as a circuit court: "and writs of error and ap-
peals shall lie from decisions *therein* to the supreme
court, in the same causes as from a circuit court to the
supreme court, and under the same regulations."

It is contended that this suit, which is an action on a
bond conditioned to be void on the relanding of goods
within the United States, is one of which the district
courts have exclusive jurisdiction, and that a writ of
error would not lie to a judgment given in such a case.

This court does not concur with the attorney-general
in the opinion that a circuit court has no original juris-
diction in a case of this description. But it is unneces-
sary to say any thing on this point, because it is deem-
ed clear that a writ of error is given in the case, how-
ever this question might be decided.

It would be difficult to conceive an intention in the
legislature to discriminate between judgments rendered
by the district court of Kentucky, while exercising the
powers of a district court, and those rendered by the
same court while exercising circuit powers, when it is

DUROUSSEAU
v
THE U. S.

demonstrated that the legislature makes no distinction in the cases from their nature and character. Causes of which the district courts have exclusive original jurisdiction are carried into the circuit courts, and then become the objects of the appellate jurisdiction of this court. It would be strange if, in a case where the powers of the two courts are united in one court, from whose judgments an appeal lies, causes, of which the district courts have exclusive original jurisdiction, should be excepted from the operation of the appellate power. It would require plain words to establish this construction.

But the court is of opinion that the words import no such meaning. The construction given by the attorney-general to the word "therein," as used in the last instance, in the clause of the tenth section, which has been cited, is too restricted. If, by force of this word, appeals were given only in those causes in which the district court acted as a circuit court exercising its original jurisdiction, the legislature would not have added the words, "in the same causes as from a circuit court." This addition, if not an absolute repetition, could only serve to create doubt where no doubt would otherwise exist.

The plain meaning of these words is, that wherever the district court decides a cause which, if decided in a circuit court, either in an original suit, or on an appeal, would be subject to a writ of error from the supreme court, the judgment of the district court shall, in like manner, be subject to a writ of error.

This construction is, if possible, rendered still more obvious by the subsequent part of the same section, which describes the jurisdiction of the district court of Maine in the same terms. Apply the restricted interpretation to the word, "therein," in that instance, and the circuit court of Massachusetts would possess jurisdiction over causes in which the district court of Maine acted as a circuit court; and not over those in which it acted as a district court; a construction which is certainly not to be tolerated.

Had this judgment been rendered by the district DUROUSSEAU
court of Kentucky, the jurisdiction of this court would   THE U. S.
have been perfectly clear.                                  v.

The remaining question admits of more doubt.

It is said that the words used in the law creating
the court of Orleans, describe the jurisdiction and
powers of that court, not of this, and that they give
no express jurisdiction to this court. Hence it is
inferred, with considerable strength of reasoning, that
no jurisdiction exists.

If the question depended singly upon the reference
made in the law creating the court for the territory
of Orleans to the court of Kentucky, the correctness of
this reasoning would perhaps be conceded. It would
be found difficult to maintain the proposition, that in-
vesting the judge of the territory of Orleans with the
same jurisdiction and powers which were exercised by
the judge of Kentucky, imposed upon that jurisdiction
the same restrictions arising from the power of a su-
perior court, as were imposed on the court of Ken-
tucky.

But the question does not depend singly on this
reference ; it is influenced by other very essential con-
iderations.

Previous to the extension of the circuit system to
the western states, district courts were erected in the
states of Tennessee and Ohio, and their powers were
described in the same terms with those which describe
the powers of the court of Orleans. The same re-
ference is made to the district court of Kentucky.
Under these laws this court has taken jurisdiction of
a cause brought by writ of error from Tennessee.
It is true the question was not moved, and, conse-
quently, still remains open. But can it be conceived
to have been the intention of the legislature to except,
from the appellate jurisdiction of the supreme court,
all the causes decided in the western country, except
those decided in Kentucky ? Can such an intention

DUROUSSEAU
v.
THE U S.

be thought possible?. Ought it to be inferred from ambiguous phrases?

The constitution here becomes all important. The constitution and the laws are to be construed together. It is to be recollected that the appellate powers of the supreme court are defined in the constitution, subject to such exceptions as congress may make. Congress has not expressly made any exceptions; but they are implied from the intent manifested by the affirmative description of its powers. It would be repugnant to every principle of sound construction, to imply an exception against the intent.

This question does not rest on the same principles as if there had been an express exception to the jurisdiction of this court, and its power, in this case, was to be implied from the intent of the legislature. The exception is to be implied from the intent, and there is, consequently, a much more liberal operation to be given to the words, by which the courts of the western country have been created.

It is believed to be the true intent of the legislature to place those courts precisely on the footing of the court of Kentucky, in every respect, and to subject their judgments, in the same manner, to the revision of the supreme court. Otherwise the court of Orleans would, in fact, be a supreme court. It would possess greater and less restricted powers than the court of Kentucky, which is, in terms, an inferior court.

The question of jurisdiction being decided, it was stated by the counsel that the seven following cases on the docket, viz. the cases of *Bera and others*, *Connelly and others*, *Castries and others*, *Gibbs and others*, *Childs and others*, *Clayand ot hers*, and *Keene and others*, *against the United States*, all from New Orleans, stood upon the same pleas of unavoidable accident; excepting that in the cases of *Bera and others*, and *Connelly and others*, the accident was *capture* by the British, and prevention by superior force from relanding the goods

in the United States.   The bond in *Bera's* case was
dated the 21st of March, 1808.   The condition was the
same as in the case of *Durousseau.*

   *P. B. Key,* · *E. Livingston,* *C. Lee,* and *R. G.
Harper,* for the plaintiffs in error.

These cases are all within the benefit of the act of
congress passed the *12th of March,* 1808, *section 3. vol.
9. p. 71.* which enacts, " that in every case where
a bond hath been or shall be given to the United States,
under this act, or under the act entitled ' an act laying
an embargo on all ships and vessels in the ports
and harbours of the United States,' or under the act
supplementary to the last-mentioned act, with condi-
tion that certain goods, wares and merchandise, or the
cargo of a vessel, shall be relanded in some port of the
United States; the party or parties to such bond shall,
within four months after the date of the same, produce
to the collector of the port from which the vessel had
been cleared with such goods, wares, merchandise, or
cargo, a certificate of the relanding of the same from
the collector of the proper port, on failure whereof the
bond *shall* be put in suit, and in every such suit judg-
ment *shall* be given against the defendant, or defendants,
unless *proof* shall be produced of such relanding, or
of loss by sea, *or other unavoidable accident.*"

It is contended that this act means *loss* by sea, or
*loss* by other unavoidable accident ; but this construc-
tion is contradicted by the punctuation of the statute.
If it had been intended to have the construction con-
tended for, it would have been pointed thus: unless
proof shall be produced of such relanding or of loss,
by sea or other unavoidable accident." The court
can no more alter the punctuation of a statute than the
words.   To give it the construction contended for, is
to make the legislature speak nonsense ; it would
make them say the *sea* is an *accident.*

We consider this point as settled by the case of
*The United States* v.   *Hall and Worth,* at this term,
(*ante, p.* 171.)

*Jones*, contra.

The statute enlarges the obligation of the bond. The officer is bound to take the bond exactly in the form prescribed by the statute. There is only one act which prescribes the form of the bond ; but there are several acts which modify its effect.

The third embargo act has annexed a new meaning to the condition of the bond. A bond taken under a known law, has the meaning and effect declared by that law. The act contemplates two excuses, viz. loss by perils of the sea, and loss by superior force; but at all events there must be a *loss.*

But in this case there is not a sufficient averment of a necessity even of going into the Havanna, and there is no averment of a loss. The detention at Havanna, and not the injury by the winds and waves, is averred to be the reason why they could not comply with the condition of the bond.

If a vessel be driven by a storm upon the coast of an enemy, and there captured, it is not a loss by perils of the sea. *Peake's Cases,* 130. *Green* v. *Elmsly.* The *remote* cause is never stated as the cause of the loss. And an averment of loss by capture cannot be supported by evidence of a loss by perils of the sea. 1 *Term Rep.* 304. *Kulen Kemp* v. *Vigne.* 3 *Bos. & Pull.* 23. *Matthie* v. *Potts.* 1 *Term Rep.* 130.

The third section of the third embargo act, *vol* 9. *p.* 71. requires more strict proof than had been before required. The legislature was competent to say what degree of proof should be required of a *bonâ fide* excuse. They have supposed that nothing but the loss of the thing itself could be satisfactory evidence of the impossibility of complying with the condition of the bond.

This is also the true grammatical construction of the sentence. After saying *proof of* relanding, or *of* loss by sea, the word *of* is omitted. If proof of other unavoidable accident was intended to be admit-

ted as an excuse in the same manner as proof of loss by sea, the language would have been, proof of re-landing, or of loss by sea, or *of* other unavoidable accident. If proof of unavoidable accident was intended as an excuse, they would have said, or other un-avoidable accident which should actually render it impossible to reland the goods in the United States.

But as the clause now stands, if our opponents are right in their construction, proof of unavoidable accident will be in excuse, although it be not such an accident as would necessarily render, or should actually have rendered, it impossible to comply with the condition of the bond, whether it produce loss, or not, and whether it prevented the relanding, or not.

It does not appear by the plea that the defendants did not make a great profit by the voyage.

*E. Livingston,* in reply.

We are entitled to the benefit of the exception of dangers of the seas in the condition of the bond, and also to the benefit of the exception of unavoidable accident in the statute.

The plea states as strong a case of necessity as that of the case of *The United States* v. *Hall and Worth,* decided by this court at this term.

We have made out a clear case both under the exception of dangers of the seas, and under the provision of the statute, in case of unavoidable accident. No man can be bound to do an impossibility

Insurance cases do not apply to the present; there the contract enumerates a great number of risks, and courts and litigants employ themselves in classing losses under one or another of those risks. In every other kind of contract, *the* expression, " *dangers of the seas,*" means every accident that can happen at sea. In a bill of lading the master contracts to deliver the

Durousseau
v.
The U. S.

goods at a certain place, the dangers of the seas ex-cepted. No body ever supposed he would be liable if the goods should be captured or seized by the superior force of public enemies.

The case cited from *Bunbury* was upon a statute which required proof that the goods *perished* in the sea; but our statute has no such clause.

MARSHALL, Ch. J. delivered an opinion to the following effect:

The court considered many of the points in these cases while they had the case of *The United States* v. *Hall and Worth* under consideration, and upon the present argument I understand it to be the unanimous opinion of the court, that the law is for the plaintiffs in error, in all these cases. I cannot precisely say what are the grounds of that opinion; I can only state the reasons which have prevailed in my own mind.

It is true, as contended on the part of the United States, that the legislature is competent to declare what evidence shall be received of the facts offered in excuse for a violation of the letter of a statute.

I also agree with the counsel for the United States, that the words of the statute, " *loss by sea or other un-avoidable accident*," mean loss by sea, or *loss* by other unavoidable accident.

But the question is, what sort of loss is meant? It must be such a loss as necessarily prevents the party from complying with the condition of the bond. It is not necessary that it should be an actual destruction of the property, but such a loss only as necessarily prevents the relanding of the goods.

This statute is not like that upon which the prosecution was founded in the case cited from *Bunbury*. Our statute does not require evidence that the goods have " *perished in the sea*" . It only requires proof of such a loss, by an unavoidable accident, as prevents the

relanding of the cargo, according to the condition of the bond. When the property is captured, and taken away by the superior force of a foreign power so as to prevent the relanding, it is lost within the meaning of the statute by an unavoidable accident, although the owner may have received a compensation for it.

JOHNSON, J. I agree with the court in the result of the opinion, but not altogether upon the grounds stated by the Chief Justice. If the act in question will admit of two constructions, that should be adopted which is most consonant with the general principles of reason and justice. I cannot suppose that the legislature meant to do an unjust, or an unreasonable act. No man can be bound to do impossibilities. The legislature must be understood to mean that the party should be excused by showing the occurrence of such circumstances as rendered it impossible to perform the condition of the bond. To make his liability depend upon the mere point of ultimate loss or gain would be unreasonable in the extreme.

LIVINGSTON, J. I concur in the reversal of these judgments, but not in the construction which the Chief Justice puts upon the third section of the act of March, 1808.

If the relanding of the cargo in the United States had been prevented by any unavoidable accident whatever, although the goods themselves were not *lost*, it would, in my opinion, have furnished a good defence to this suit.

If the Spanish government had forced a sale of the property; and the proceeds had actually come to the hands of the owners, it would have made no difference. Loss by sea is one excuse; unavoidable accident, whether followed by loss, or not, is another.

Durousseau
v.
The U S.

WASHINGTON and TODD, Justices, agreed in opinion with Judge Livingston.

Judgment reversed.