## THOMPSON vs. LEA.

[MOTION TO DISMISS APPEAL AFTER JOINDER IN ERROR AND ARGUMENT.]

1. *Appellate jurisdiction of the supreme court.*—The appellate jurisdiction of the supreme court, in the revision of final judgments and decrees of the inferior courts, is derived from the constitution, (Art. V, §§ 1 and 2,) and is not restricted by the statutory provisions regulating appeals: the appeal, bond or security for costs, and certificate, required by the Code, (§§ 3016, 3041,) are not jurisdictional facts, but merely the prescribed means by which each particular case may be brought under the pre-existing jurisdiction of the court.—*Per* Walker and Stone, JJ.; while Rice, C. J., held, that, however full and complete might be the appellate jurisdiction conferred by the

Thompson v. Lea.

constitution, the public policy of the State, as disclosed and declared by the Code, required that that jurisdiction should not be exercised in favor of a party who did not comply with the requisitions of the statutes regulating appeals.

2. *Joinder in error waives defects in appeal.*—A joinder in error is a waiver of the appeal, bond, or security for costs, and of all defects therein, and a motion to dismiss the appeal afterwards comes too late. (Rice, C. J., *dissenting*.)

APPEAL from the Chancery Court of Perry.

Heard before the Hon. JAMES B. CLARK.

The transcript in this case was filed at the June term, 1854, to which the appeal was taken. Errors were assigned at the same term; and, after joinder in error, the cause was argued on the merits, and submitted. At the January term, 1855, an opinion was pronounced, which was afterwards withdrawn, on petition for a re-hearing, and a re-argument in writing ordered at the next term. At the present term, all the judges who heard the original argument at the bar having since resigned, the cause was remanded to the docket, and another argument ordered. A motion to dismiss the appeal was then submitted, which seems to have been predicated upon a defect in the appeal bond, in misdescribing the decree, and in being sued out in the name of only one defendant. The judges delivered their opinions on the motion *seriatim*.

WM. M. BROOKS, and JOHN T. MORGAN, for the motion.

I. W. GARROTT, with whom was ALEX. WHITE, *contra*.

STONE, J.—The appellate jurisdiction of this court is conferred by the constitution, and is co-extensive with the State.—Constitution of Alabama, Art. V, § 2. It lies, as a matter of right, on the application of either party, or their personal representatives, from any *final* judgment or decree of the chancery, circuit, or probate courts, " except in such cases as are otherwise directed by law."—Code, § 3016. It follows, then, that in all cases, except those " otherwise directed by law," when final judgment has been rendered by an inferior tribunal, the supreme court has jurisdiction of the subject-matter. This jurisdiction is not created by, or dependent for its existence on, the statutes of the State. If no statutory regulations were enacted, still the jurisdiction would exist;

and the court, in carrying out the purposes of its creation, would supply the means "necessary to give it a general superintendénce and control of inferior jurisdictions."—Const. Art. V, § 2.

The constitution declares, that the appellate jurisdiction of the supreme court shall be subject to "such restrictions and regulations as may, from time to time, be prescribed by law." Article V, § 2, chapter 1, title 5, of the Code, contains the chief "restrictions and regulations" which the legislature have heretofore imposed. Section 3040 prescribes the time within which an appeal may be taken. Sections 3016 and 3041 enact, that "the clerk, register, or judge of probate, must certify the fact that such appeal was taken, and the time when, as part of the record"; and said section 3016 further provides, that a compliance with its provisions "gives the supreme court jurisdiction of the case." What is the proper construction of the words, "gives the supreme court jurisdiction of the case"? Not that the certificate *creates* the appellate jurisdiction of this court: the constitution had done that. The language, "appellate jurisdiction," is employed in contradistinction to original jurisdiction, and defines, *ex vi termini*, the subject-matter of that jurisdiction; namely, the right of "declaring and applying the law," to questions arising on final judgments and decrees of inferior courts. It is manifest, then, that the constitution confers on the supreme court jurisdiction over the *subject-matter*.

Neither does the certificate, except in a qualified sense, give jurisdiction over the person. The term "persons" simply denotes the *parties* who are to be affected by the decision of the questions arising on the record. Without parties, neither this court nor any other can pronounce judgment on the subject-matter. In courts of primary jurisdiction, the plaintiff voluntarily gives the court jurisdiction over his rights, by availing himself of the process which the law affords, to compel his adversary to litigate with him. The defendant is in this way brought into court; and thus those courts acquire jurisdiction over the "persons." Final judgment being rendered on the matter in controversy between the *persons* or *parties* litigating there, the *subject-matter* in dispute, and the *disputant parties*, become inseparably united; and this court can-

not consider the questions arising out of the former, except as they are in issue between the latter. Persons, or parties, constitute an indispensable element in the subject-matter,—final judgments,—and are in one sense necessarily implied in the constitutional grant of jurisdiction.

Seeing, then, that the jurisdiction of this court over subject-matter and persons, so far as the latter is an element of the former, arises under the constitution, can either the bond or certificate be properly regarded as a jurisdictional fact? To hold them such, is to declare that the solemn judgments of this court, pronounced on records wanting either the bond or certificate, or when either is substantially defective, are *absolute nullities*, and may be collaterally impeached, whenever and wherever they are offered in evidence.

The Code must be construed as a system of laws. Thus viewed, its obvious purpose was to simplify and harmonize legal proceedings. It abolishes, by implication, writs of error in civil cases, and substitutes appeals as a uniform rule. To apply to that rule the strict construction applicable to penal enactments, is to defeat, in this respect, the entire policy of the Code.

The most important change in the law of appeals, effected by the Code, is the requirement of *supersedeas* bonds, or security for costs, in all cases. The system being a new one, inexperienced or careless officers fall into many errors. Frequently the bond is defective in parties, or in the condition, and yet more frequently the certificate is informal. Sections 3016 and 3041 of the Code are a regulation of appeals, under section 2, article V, of the constitution. What are the nature and policy of this legislative regulation?

Section 3041 declares, that "no appeal can be taken without giving bond to supersede the execution of the judgment or decree, unless the appellant give security for the costs of such appeal." Section 3016 enacts, that the certificate, in conformity with its terms, "gives the supreme court jurisdiction of *the case*." In my opinion, the term "*jurisdiction*," as found in this chapter of the Code, cannot properly be regarded as conferring power *to declare or apply the law* to either *subject-matter* or *persons*, technically so called. It gives jurisdiction over *the case*. It is the *mode prescribed*, by which a party

asserting rights against another, may compel that other, with or without his consent, to come into court, and have those rights litigated and passed on. It is the *evidence* on which the court acts in taking jurisdiction of the case,—the evidence that a final judgment had been rendered in the court below, and an appeal taken to this court; sufficient evidence for the purpose, but not the only evidence on which the court could act.

This mode is nothing more nor less than the same rule which governs the bringing of suits in the circuit court, as deduced from the various provisions of the Code affecting that question. The service of complaint and summons on the defendant brings him before the court, and gives jurisdiction of *the case*. It is the machinery by which the inherent power of the court to declare the law, is brought actively to bear on the parties; the process by which a complaining party may force his adversary into court, whether he is willing or not. The defendant, without service, may waive this privilege,—can come into court, and appear or plead, and thus give the court an unquestionable right to pass on the merits of the controversy. After such appearance and plea, no one will doubt the jurisdiction of the court over subject-matter and person, or the binding efficacy of its judgments.

So, I hold, that parties, between whom there exists a final judgment in an inferior court, may waive these pre-requisites, and rightfully invoke the action of this court. I do not hold that, under an agreed state of facts, or simulated record, we could entertain jurisdiction. Our power over such subjects is appellate only. But in all cases, in which final judgment has been rendered in a court of inferior jurisdiction, in a *bona fide* suit, this court possesses the constitutional power to revise such final judgments; and our decisions pronounced in such cases, whether brought here by appeal, or by consent, express or implied, are valid and binding on the parties to them. I cannot assent to the distinction, that this mode or formula is an indispensable pre-requisite in the one case, while it is universally conceded it may be waived and dispensed with in the other.

The bond or security for costs, required by section 3041 of the Code, was obviously intended to protect parties and the

30

officers of the court, against insolvent litigants. This legislative regulation is binding on us; and whenever the appeal bond or certificate is substantially defective, or entirely wanting, and the fact is in due time brought to our notice, we are bound to respond to the motion, and to repudiate the cause. While adjusting the rights of appellants, we must observe and guard the legal rights of all others interested in the record. But I hold that these mere property rights may be waived, without at all affecting the binding efficacy of our judgments. I hold, further, that when there has been joinder in error, arguments on the merits, or other act done which admits the case rightfully in this court, the motion to dismiss for insufficient or defective appeal, comes too late.—Boone v. Poindexter, 12 Smedes & Marshall, 640; Dayton v. McIntyre, 5 How. Pr. Rep, 117.

The appeal in this case was taken to the June term, 1854. At that term, argument on the merits was offered by both parties; and at the January term, 1855, a decision was pronounced by this court. On petition by appellant, a rehearing was then ordered; and at the present term, motion is for the first time made to dismiss the appeal, for alleged irregularity in the bond for costs. In my opinion, the irregularity cannot now be inquired into, and this court has jurisdiction of *the case.*

A majority of this court concur in overruling the motion to dismiss the appeal.

WALKER, J.—I lay down the following propositions, which, in my opinion, are maintainable both by argument and authorities: 1. Jurisdiction over the matter of errors, in the proceedings of the court below, is conferred upon this court by the constitution, unless its constitutional jurisdiction has been restricted by act of the legislature. 2. Sections 3016 and 3041 of the Code do not *restrict* the jurisdiction over the subject-matter conferred by the constitution, but simply prescribe the sole instrumentality by which the adverse parties to the suit below may bring the particular case under the pre-existing jurisdiction of this court. 3. The appeal, not being a restriction upon the jurisdiction over the subject-matter, may be waived by the appellee, whose rights in the par-

ticular case the appeal would have the effect to bring under the control of this court. 4. A joinder in error is a waiver of the appeal, and of the bond or security without which there can be no appeal.

1. The first of the foregoing positions is a necessary and uncontroverted deduction from the first and second sections of the fifth article of the constitution of the State.—Durousseau v. The United States, 6 Cranch, 312.

2. If the legislature has restricted the jurisdiction over the subject-matter, in such a case as this, by making it dependent upon the fact that an appeal bond, or security for costs, has been given, it results from sections 3016 and 3041 of the Code. The former of those two sections provides, that an appeal shall lie, as a matter of right, from any final judgment or decree of the chancery, circuit, or probate courts. The latter section says, that no appeal can be taken, without bond to supersede the execution or decree, unless the appellant give security for the costs of such appeal. Under these statutes, it has been decided by this court, that there can be no appeal, unless the bond or security for costs has been given. A different rule would do violence to the statutes. The legislature having, in the exercise of its constitutional authority, prescribed an appeal as the agency by which the *law* brings under the revisory power of this court cases where there has been a final judgment or decree, there is an implied exclusion of any other. To this effect are the decisions of the supreme court of the United States.—Durousseau v. The United States, *supra;* Marbury v. Madison, 1 Cranch, 174. It follows, that this court cannot, of itself, bring its revising power to bear upon the rights of the parties to the final judgment, in the absence of the bond and security for costs, without the one or the other of which there can be no appeal. But it does not follow, that this court has no jurisdiction over the subject-matter, or that the parties may not voluntarily subject their rights under the final judgment to the operation of that jurisdiction.

An appeal, in this State, is the mode of commencing a new and independent suit in this court, the object of which is a revision of the proceedings of the inferior court. It is the mode of initiating a judicial proceeding, before a court of competent

jurisdiction.—Mazange v. Slocum & Henderson, 23 Ala. 668; Cook v. Adams, 27 Ala. 294. The appeal, and notice of it, stand in the same relation to the revising suit in this court, in which the summons and complaint now stand, and in which the *capias ad respondendum* formerly stood, to the suit in the circuit court. They are alike modes of initiating a suit,— the law-appointed means of acquiring jurisdiction of the person, and bringing the case under the jurisdiction of the court. The parties may, in the circuit court, waive the antecedent proceedings entirely, and submit themselves to the jurisdiction of the court.—Hodges v. Puckett & Ashurst, 2 Ala. 301; Bissell v. Carville & Carville, 6 Ala. 503; Caller v. Denson, Minor, 19. As well may the proceedings initiating the suit in this court be waived, as those which commence the suit in the circuit court. That conclusion can only be avoided, by successfully maintaining that the sections of the Code above referred to restrict the jurisdiction conferred by the constitution. The giving of such an effect to those sections is not authorized by the language used. The restriction of jurisdiction cannot legitimately be implied from a statute which merely prescribes the means by which that jurisdiction is to be put in operation. There is nothing in the law which justifies the conclusion, that the legislature indended to subject the jurisdiction of this court over the subject-matter, and consequently the validity of its judgments, to such a test as the sufficiency of an appeal. In Mississippi and Florida decisions have been made, which are in point, and which sustain the argument of this opinion.—Boone et al. v. Poindexter, 12 S. & M. 649; Curry v. Marvin, 2 Fla. 411.

If the legislature intended, by the two sections of the Code above quoted, to exercise the power expressly conferred upon it, to regulate the jurisdiction of this court, it is clear that they have not proceeded further than to appoint the means by which that jurisdiction may be put in exercise over the case and the parties. There can be no reason why such a regulation should not be as much subject to the waiver of the parties, as the proceedings commencing any other suit prescribed by the legislature, when acting within the circle of its authority. The manifest intention of the legislature, by the statutes under consideration, as has always been held in

reference to kindred statutes, was to provide a protection for
the appellee against the annoyance of groundless litigation by
an insolvent adversary. A principle of public policy is no
more involved here than in many other judicial proceedings,
which the law requires should be preceded by security, and
the want of which, it has been in this State uniformly decided,
may be waived by the parties.

The element in the *jurisdiction over a case* which cannot be
supplied by consent, is the *jurisdiction over the subject-matter;*
and the reason why that cannot be given by consent is, that
it must be conferred by the law. It is the authority of the
court, and can be derived alone from the law. Whatever
pertains merely to the bringing of the case under the opera-
tion of that jurisdiction, may be waived.—2 Bacon's Abridg-
ment, 618; Ives v. Finch, 22 Conn. 101; State of Rhode Is-
land v. State of Massachusetts, 12 Peters, 720; Boone et al.
v. Poindexter, *supra;* Bostwick v. Perkins, Hopkins & White,
4 Ga. 50; Martin v. Higgins, 23 Ala. 176; Moore v. Fiquet,
19 Ala. 318; Merrill v. Jones, 8 Porter, 554; Wyatt v.
Judge, 7 Porter, 37.

From the conclusion that the parties may waive the appeal,
it is a necessary sequence, that a joinder in error shall amount
to a waiver. It is an unequivocal act, implying a submission
to the jurisdiction of the court, and has always been so con-
sidered.—Turnley v. Stinson, 1 Ala. 457; King v. McIlvane
& Collier, 1 Porter, 286; Battle v. Wolf, 1 Cushman, 318;
Dayton v. McIntyre, 5 Howard's Practice Reports, 114; and
authorities above cited.

In Kentucky, Virginia, and New, York, there are decisions,
upon statutes somewhat like ours, that the security, upon
which the appeal is demandable, is a matter pertaining to the
jurisdiction of the case, and that therefore the courts must,
upon motion, dismiss in the absence of such security.—Yar-
borough and Wife v. Deshazo, 7 Grattan, 374; Clinton v. Phil-
ips, 7 Monroe, 118; Langley v. Warner, 1 Comstock, 606.

In none of these cases was the question of waiver presented,
or passed upon. In a New York case, in which the question
did arise, it was decided, in effect, that the motion to dismiss
would not be sustained, after the party has "appeared, an-
swered, or proceeded in such a manner as to give the court

thereby jurisdiction in the case."—5 Howard's Prac. R. 114. The Virginia, Kentucky, and New York decisions are not opposed to the conclusion attained in this opinion, because they do not touch the question, and because it is based upon the concession of all that is decided in those cases. Wherever the question has been directly made, as far as my investigations have enabled me to discover, the authorities have uniformly held, that all the proceedings designed to bring the party into court, might be waived; and in the cases in which the appeal was dismissed, it was on motion of the appellee, and in the absence of a waiver.

There is no decision in this State irreconcilable with my conclusions. The doctrine of waiver, in reference to appeals under the Code, has never, until this term, been raised. There does not appear to have been any case, in which an appeal has been dismissed in this State after a joinder in error. In one case, (The State v. Williams, 26 Ala. 85,) it is stated, by mistake, that the dismissal was *ex mero motu.* In several of the cases, the cause was stricken from the docket, because the court had not acquired jurisdiction of the case. The question whether that jurisdiction could have been given by the parties did not arise. In Carey v. McDougald, 25 Ala. 109, there are two or three expressions in the argument of the opinion, which tend to a conclusion different from that to which I have attained. I regard the decision in the case of Carey v. McDougald, as a sound exposition of the law, and I entertain the highest respect for the opinions of the late court, and would be extremely reluctant to depart from them. It is, therefore, a source of congratulation, that, upon this important question, the convictions of my judgment have brought me in conflict with only two or three incidental expressions in the previous decisions of this court.

To deny to a joinder in error the effect of waiving an appeal, or deficiencies in it, would be productive of great injustice. It would permit appellees to conceal a detected deficiency in the appeal, until another appeal was barred by lapse of time, or until on the hearing in this court he might find the inclination of the court adverse to him on the merits. He would thus be able to wrong his adversary and speculate upon

the chances in this court. A rule which would be attended by such consequences, ought not to be inferred from the statute, unless it is required by the clearest language.

RICE, C. J.—The 2nd section of the 5th article of the constitution of Alabama is in the following words: "The supreme court, except in cases otherwise directed by this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the State, under such restrictions and regulations, not repugnant to this constitution, as may, from time to time, be prescribed by law; *provided*, that the supreme court shall have ·power to issue writs of injunction, *mandamus*, *quo warranto*, *habeas corpus*, and such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions."

"Appellate jurisdiction," and "a .general superintendence and control of inferior jurisdictions," are both conferred by that section upon this court; but they are nevertheless distinct things, and must not be confounded. Under the former, this court can do no act unless it be either an exercise of appellate jurisdiction, or necessary to enable it to exercise appellate jurisdiction; for appellate jurisdiction means, jurisdiction to revise and correct the proceedings in a cause already instituted, and not to create a cause.—Marbury v. Madison, 1 Cranch, 175. · Under the latter, this court may take *original jurisdiction* of divers applications; as, of an application by a member of the house, for a *mandamus* against the speaker, to compel him to certify to the comptroller the amount to which the member is entitled for mileage and *per diem* compensation; or of an application for a prohibition to a chancellor; or of an information, in the nature of a *quo warranto*, to try the eligibility of an individual to the office of a circuit judge held by him.—*Ex parte* Morgan Smith, 23 Ala. R. 94; *Ex parte* Pickett, 24 Ala. R. 91; The State v. Porter, 1 Ala. R. 688.

"A general superintendence and control of inferior jurisdictions" is, by the constitution, granted to this court unconditionally. "Appellate jurisdiction" is, by the very terms of the grant, *subjected to* "such restrictions and regulations, not repugnant to this constitution, as may, from time to time, be prescribed by law."

In the case at bar, we are not called on to decide any thing as to the power of "general superintendence and control of inferior jurisdictions." I allude to it merely to distinguish it from the "appellate jurisdiction" of this court. The important question now presented is, shall we *exercise* that "appellate jurisdiction," in favor of a party who has neither done nor offered to do what "the restrictions and regulations" "prescribed by law" required him to do, or shall we decline to exercise that jurisdiction and dismiss his appeal.

My opinion is, that the law requires us to decline to exercise that jurisdiction at his instance, and to dismiss his appeal.—Durousseau v. The United States, 6 Cranch, 312.

Every party who invokes the exercise of the jurisdiction of a court, is required to show *his right* to its exercise; and however full and complete the "appellate jurisdiction" of this court may be under the constitution, yet the public policy of this State in relation to appeals, as disclosed and established by the Code, requires us not to exercise that jurisdiction in favor of a party who has not complied (or offered to comply) with the "restrictions and regulations" prescribed in section 3041. That section explicitly declares, that "no appeal can be taken *without giving bond* to supersede the execution of the judgment or decree, unless *the appellant give security* for the costs of such appeal, to be approved by the clerk, register, or judge of probate."

Before the adoption of the Code, our statutes authorized the issue of a writ of error to the respective circuit and chancery courts, at any time within three years after the rendition of final judgment or decree by those courts, as matter of right, without money, bond, or security of any kind. The Code does not authorize the issue of a writ of error in any civil case. It confers the right to an appeal by section 3016; but, by section 3041, it explicity declares, that "*no appeal can be taken* without giving bond to supersede the execution of the judgment or decree, unless the appellant give security for the costs of such appeal, to be approved by the clerk, register, or judge of probate."

Remembering that the statutes of force before the adoption of the Code never authorized an appeal without bond and

security; that they did authorize the issue of a writ of error, without bond or security of any kind, at any time within three years after final judgment or decree; that these statutes were succeeded and superseded by the Code; that it has fixed a much shorter time, within which an appeal must be taken, than was allowed by the former statutes for suing out a writ of error; that it does not authorize the issue of a writ of error in any civil case; that although, in section 3016, it speaks of an appeal as matter of right, yet in the same chapter, and in section 3041, it declares that "no appeal can be taken without *giving bond* to supersede the execution of the judgment or decree, unless *the appellant give security* for the costs of such appeal, to be approved by the clerk, register, or judge of probate",—I am forced to the conclusion, that the law, as found in section 3041, is to be regarded as a law of public policy, and not as a law conferring a mere privilege on the appellee, which he may waive at his pleasure. This public policy may be wise or unwise; but, whether it be the one or the other, it ought not to be defeated by this court. We do defeat it, if we hold that the appellee may *waive* the appellant's non-compliance with the "restrictions and regulations" prescribed by the Code. I cannot consent to apply the doctrine of waiver, so as to make it operate to *create a right* in favor of an appellant *to disregard* those "restrictions and regulations", and to overturn the clearly established public policy as to appeals. I have not been able to find any authority for such an application of that doctrine; and I think it better to stand on the plain letter of the Code, than to establish a precedent so defiant of its clearly expressed provisions, and so entirely unsupported by authority.

All the former decisions of this court, made since the Code went into effect, in relation to appeals, are founded upon the course of reasoning which I have above followed. And I differ from my brethren, in the opinion expressed, that their conclusion in this case does not conflict with those decisions. If the conclusion attained by my brethren in this case be correct, it annihilates the foundation and reasoning upon which only they can be supported. I adhere to the decisions heretofore made, and believe they are sustained by principle and authority.—Carey v. McDougald, 25 Ala. R. 109; King

v. McCann, 25 *ib.* 471; Hinson v. Preslor, 27 *ib.* 643; Moore v. McGuire, 26 *ib.* 461; The Union Bank v. McBride, 2 Fla. Rep. 7; Gordon v. Camp, *ib.* 23; Curry v. Marvin, *ib.* 411; Boone v. Poindexter, 12 Smedes & Marsh. Rep. 640.

If the motion to dismiss the appeal in this case had been made at the first term after it came here, and before joinder in error, or argument on the merits, or continuance, my brethren would have agreed with me, that the motion should be granted. But they hold that the motion now made comes too late, and that the right to make it is waived by joinder in error and argument on the merits. My opinion is, that an appeal which is invalid for want of the bond or security required by section 3041 of the Code, when it comes into this court, *never can acquire validity while it is pending here;* and that *the right of an appellant* to invoke the exercise of the " appellate jurisdiction" of this court cannot be *created* by the mere acts or omissions of *the appellee after the case is brought into this court,* but must *exist before the case is brought here,* and must arise from his compliance with the require- ments of section 3041 of the Code. The legislature having prescribed in the Code the " restrictions and regulations" which are to govern this court in the exercise of its " appel- late jurisdiction", I cannot give my assent to a decision which arms the appellee with the power to alter the law, to defeat the public policy of the State as to appeals, and to relieve this court from its duty to obey and administer the law as enacted by the legislature.—Durousseau v. The United States, 6 Cranch, 312; Tisdale v. Gandy, 1 Dev. R. 282; Fagan v. Jacocks, 4 Dev. Rep. 264; authorities cited *supra.*