MURDOCK, Justice
(dissenting).
I agree with Chief Justice Moore that Coretta Arrington’s complaint was not due to be dismissed for lack of subject-matter jurisdiction. Indeed, were it not for the passage in which Chief Justice Moore urges equitable tolling as the doctrinal basis for what we both agree would be the correct result in this case, I would join Chief Justice Moore’s dissent. I write separately then (1) to explain my disagreement with Chief Justice Moore’s invocation of the doctrine of equitable estoppel in this case and, further, (2) to explain why I believe, the actions taken by ;Arrington nonetheless were sufficient to meet the statute of limitations.
To begin, I agree with the statements at the outset of Chief Justice Moore’s dissent to the. effect that the subject matter of this case — a tort action — certainly is subject matter over which the Montgomery Circuit Court had jurisdiction. I also agree, as the dissent - concludes, that this Court’s opinion in De-Gas, Inc. v. Midland Resources, 470 So.2d 1218 (Ala.1985), was concerned with what a plaintiff must do to satisfy a statute of limitations, not with the subject-matter jurisdiction of the trial *796 court, and that Johnson v. Hetzel, 100 So.3d 1056, 1057 (Ala.2012), in which this Court gave a more- expansive reading to De-Gas, should be overruled.
What I cannot agree with in Chief Justice Moore’s dissent is the discussion in which he suggests resort to the doctrine of equitable estoppel. As the author of this Court’s opinion in Weaver v. Firestone, 155 So.3d 952 (Ala.2013), I cannot agree that the doctrine of equitable tolling invoked in that case is the proper vehicle for examining the issue presented here. As we explained in Weaver, the application of the doctrine of equitable tolling to provide relief from the running of a statutory limitations period requires a very fact-specific weighing of the applicable facts and, at the end of the day, is available only in response to extraordinary circumstances:
“ ‘[A] litigant seeking equitable tolling bears' the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ as to the filing of his action. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). In Ex parte Ward, 46 So.3d 888 (Ala.2007), this Court ‘[held] that equitable tolling is available in extraordinary circumstances that are beyond the petitioner’s control and that are unavoidable even with the exercise of diligence.’ 46 So.3d at 897. The Court noted, that in determining whether equitable tolling is applicable, consideration must be given as “‘to whether principles of ‘equity would make the rigid application of a limitation period unfair’ and whether the petitioner has ‘exercised reasonable diligence in investigating and bringing [the] claims.’”’ Id. (quoting Fahy v. Horn, 240 F.3d 239, 245 (3d Cir.2001), quoting in turn Miller v. New Jersey Dep’t of Corr., 145 F.3d 616, 618 (3d Cir.1998)); see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing-a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.’ (footnotes omitted)). This Court acknowledged in Ward that ‘ “the threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule.” United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir.2000).' 46 So.3d at 897. The plaintiff
“ ‘bears the burden of demonstrating ... that there are ... extraordinary circumstances' justifying the application of the doctrine of equitable tolling. See Spitsyn v. Moore, 345 F.3d [796,] 799 [(9th Cir.2003)] (holding that the burden is on the petitioner for the writ of habeas corpus to show that the exclusion applies and that the “extraordinary circumstances” alleged, rather than a lack of diligence on his part, were the proximate cause of the untimeliness); Drew v. Department of Corr., 297 F.3d 1278, 1286 (11th Cir.2002) (“The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.”).’
“Ward, 46 So.3d at 897. It is well settled that whether equitable tolling is applicable in a case generally involves a ‘ “fact-specific inquiry.” ’ See, e.g., Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir.2003); Putnam v. Galaxy 1 Marketing, Inc., 276 F.R.D. 264, 275 (S.D.Iowa 2011) (‘[R]esolution of the issue is fact-specific.’); see also Transport Ins. Co. v. TIG Ins. Co., 202 Cal.App.4th 984, 1012, *797 136 Cal.Rptr.3d 316, 337 (2012) (‘[W]e are hard pressed to think of more fact-specific issues than “accrual” and [equitable] “tolling.” ’).”
Weaver, 165 So.3d at 957-58 (footnote omitted).
The circumstance presénted here — ah indigent plaintiff timely filing a complaint accompanied by an affidavit of substantial hardship in lieu of a filing fee — does not in my view constitute the extraordinary circumstance contemplated by our holding in Weaver. To the contrary, in fact, the circumstances in this case do not even represent a failure of the plaintiff to meet the deadline for- commencing an action imposed by the statute of limitations thereby necessitating resort to any doctrine to save the complaint, much less the doctrine of equitable estoppel.
As the main opinion notes:
“‘Although Rule 3, Ala. R. Civ. P., states that “[a] civil action is commenced by filing a complaint with the court,” this Court has held that the filing of a complaint is not the sole factor in determining when an action is “commenced.” ’ ”
939 So.3d. at 9 (quoting Ex parte East Alabama Mental Health-Mental Retardation Bd., Inc., 939 So.2d 1, 3 (Ala.2006)). We have explained that, in addition to being filed in a timely manner-, the filing of a complaint must be done in a manner that demonstrates “a bona fide- intent, at the time of filing, to proceed with this action”, De-Gas, 470 So.2d at 1222. That is, the complaint may not be filed in a manner that “effectively preclude^] any action by the clerk’s office,” but must be fíléd with everything “necessary to actually set the case in motion.” Id., at 1220, 1222. Thus, in Pettibone Crane Co. v. Foster, 485 So.2d 712, 713 (Ala.1986), we held that “the filing of a complaint within the statutory period but without any instructions with regard to serving the defendant with process and without any explanation as to why no instructions are included” does not demonstrate the bona fide intent to proceed with the action at that time and is insufficient to meet the statute of limitations.
Contrary to the view expressed in the main opinion, it appears to me that the result in Mace v. Centel Business Systems, 549 So.2d 70 (Ala.1989), was a function of a comparable failure of the plaintiff to include with the filing of her complaint the necessary summons and information to accomplish service that evidenced a lack of intent to actually commence the lawsuit in that case. Similarly, in Ward v. Saben Appliance Co., 391 So.2d 1030, 1035 (Ala.1980), we held that an action was' not corhmenced for statute-of-limitations purposes on the day the complaint was filed when that filing was accompanied by a request to withhold service. And in DeGas, a case in which the plaintiff merely neglected to pay the filing fee (there was no attempt to file an affidavit of substantial hardship in lieu of the payment of the fee), we explained:
“By failing to pay at the time of filing the complaint the filing fee mandated by § 12-19-70, [Ala.Code 1975,] the plaintiffs not only caused service to be withheld but effectively precluded any action by the clerk’s office necessary to actually set the case in motion.”
470 So.2d at 1221-22 (emphasis, other than on “any,” added).
Unfortunately for present purposes, the opinion in De-Gas went further and,, through dicta in the following single sentence, laid the groundwork for what I consider to be much confusion: “[T]he payment of the [filing] fee[ ] ... or the filing of a court-approved verified statement of substantial hardship .is a. jurisdictional prerequisite to the commencement of an action for statute of limitations purposes.” 470 So.2d at 1222 (emphasis added). This *798 sentence unfortunately conflates the issue of what is necessary to meet the filing deadline of a statute of-limitations (which has nothing to do with “jurisdiction”) and the issue of what must occur in order for a 'court thereafter to have authority to act in an otherwise timely filed case.
In particular, the first problem with this sentence- is that, in dicta, it references a potential factual scenario not at issue in De-Gas, i.e., the filing,by a plaintiff of a complaint accompanied by an affidavit of substantial hardship in lieu of the filing fee. De-Gas involved nothing more than a mere failure on. the part of the plaintiff to pay the filing fee; no attempt to file an affidavit of substantial hardship was made in De-Gas, and no issue regarding the timing or nature of the affidavit that would have to be filed was before the court.
Making this dicta more .problematic, the sentence injects into the discussion the concept. of “jurisdiction.” This in a case involving an issue of satisfaction of the statute of limitations, an issue that has nothing whatsoever to do with the jurisdiction of the court — subject-matter or otherwise. A failure to, satisfy a statute of limitations merely gives rise to a waivable affirmative defense.
Further confusing the issue, the problematic sentence speaks of “the filing of a court-approved verified statement of substantial hardship,” which the main opinion takes as requiring Court approval before the statute of limitations has run. Yet, if read literally, this sentence actually would require that the statement of substantial hardship must already be approved at the time of its filing. In any event, our rules offer ho procedure entitling a plaintiff to seek some sort of pre-complaint approval of a-statement of substantial hardship. It appears then that the Court was-intending to describe simply the requirement that, if a filing fee is not paid with the complaint, the plaintiff must file.an affidavit-that, ultimatelyj meets with the approval of the court.
The main opinion’s understanding of this language as requiring that the affidavit of substantial hardship be approved at some point before the statute of limitations expires would mean that a .plaintiffs meeting a statute-of-limitations deadline depends not on the plaintiffs own action, but on how quickly a third party — a trial court judge-stakes some sort of action. Such a scheme is unseemly.at best, and unworkable and inequitable at worst. Indeed, it raises the specter that two plaintiffs appearing before two different judges in adjoining circuits, or even in the same circuit, with similar causes of action against the same defendant might file essentially the same “papers” (including in both cases similar affidavits of substantial,.hardship) in an effort to commence an action several weeks (or perhaps even months) before the expiration of a statute.-pf limitations and that one will be deemed in the end to have succeeded in meeting-the deadline while the other will not, the only difference between them being the timeliness of the trial judge assigned to their respective cases, • Surely the satisfaction of a statute of limitations, not to mention the invocation of a court’s jurisdiction, is something that is to be within the control of the plaintiff and not dependent on the actions of a third party,- even if that third party is the court itself.
..In the end, I must conclude that the reference in De-Gas to ,the necessity of a “court-approved verified statement of substantial hardship” was a loosely, and ultimately poorly, worded attempt to note that a trial court loses authority .to act in a case, if it - subsequently fails to approve the plaintiffs affidavit. Again, however, even this statement is dicta in that the issue in De-Gas was compliance with the statute-of *799 limitations. That also is the only issue here.[7]
Unlike in De-Gas, in which the plaintiff merely neglected to pay a filing fee and there was no attempt to file an affidavit of substantial hardship. in lieu thereof, the plaintiff in this case did file such an affidavit and thereby did everything she could do to “set the case in motion.” The clerk was not waiting on anything further from the plaintiff. The statute of limitations therefore was satisfied in this case. If in the .end the affidavit had not been approved, then, upon proper motion of the defendant or on the court’s own motion, the trial court would have been obligated to dismiss the case for loss of jurisdiction over the ease. Even that turn of events would not have undone the plaintiffs previous meeting, of the statute of limitations.

. Consistent with the approach of overruling Johnson v. Hetzel, 100 So.3d 1056, 1057 (Ala.2012), as urged by two judges of the Court of Civil Appeals and discussed in Chief Justice Moore’s dissent, the reference to "jurisdiction” in the problematic sentence in De-Gas can and should be treated as a reference not to the "subject-matter jurisdiction” imparted to circuit courts by § 142 of the Alabama Constitution of 1901, but to what is properly understood as "jurisdiction over the case.” By this I mean the authority of a court over a given case that is acquired when there has been compliance with the necessary procedural formalities to put the case before the court arid the failure of which may be waived if not timely objected to-by the court or the opposing party. Cf. Thompson v. Lea, 28 Ala. 453 (1856), in which Justice Stone wrote the court’s opinion inquiring whether failure to post a bond as required by a statute governing appeals could be considered a defect of. subject-matter jurisdiction of the Supreme Court. "To hold them such,” Justice Stone reasoned, "is to declare that the solemn judgments of this court, pronounced on records wanting either the bond pr certificate, or when either is substantially defective, are absolute nullities,' and may be collaterally impeáched....” 28 Ala. at 456. Justice Stone continued:
"Section 3041 declares, that ‘no appeal can be taken without giving bond to supersede the execution of the judgment or decree, unless &e appellant give security for the costs of such appeal.’ Section" 3016 enacts, that the certificate, in conformity with its terms, ‘gives the supreme court jurisdiction of the case.’ In my opinion, the term ‘jurisdiction,’ as found in this'chapter of the Code, cannot properly be regarded as conferring power to declare or apply the law to either subject-matter or persons, technically so called. It gives jurisdiction over the case. It is the mode prescribed, by which a party asserting rights against another, may compel that other, with or without his consent, to come into court, and have those rights litigated and passed on.”
Thompson, 28 Ala. at 456-57 (emphasis added). Justice Stone reasoned that the Court would be bound to distniss'the appeal if an objection was timely made, but that “when there has been joinder .in error, arguments on the merits, or other act done which admits the case rightfully in this court, the motion to dismiss for insufficient or defective appeal, comes too late.”.: Id. at 458..
Justice Walker agreed with Justice Stone’s distinction between subject-matter jurisdiction and jurisdiction over > .the case, and warned of the injustices that could arise from the failure to distinguish between subject-matter jurisdiction and jurisdiction over the case:
"To deny to a joinder in error the effect of waiving an ¡appeal, or deficiencies in it, would be productive of great injustice. It would permit appellees'to conceal a detect'ed deficiency in the appeal, until another appeal was barred by lapse of time, or until on the hearing in this court he might find the inclination of the court adverse to him on the merits. He would thus be able to wrong his adversary and speculate upon the chances in this court. A rule which would be attended by such consequences, pught not to be inferred from the statute, unless it is required by .the clearest language.”
Thompson, 28 Ala. at 462-63 (opinion of Walker, J.).