## UNITED STATES *v.* CIRCUIT JUDGES.

A proceeding in the District or Circuit Court of the United States under the act of March 3d, 1851,* for the ascertainment and settlement of private land claims in the State of California, is in the nature of a proceeding in equity. A decree of the Circuit Court in one of these cases transferred to it is therefore subject to appeal to the Supreme Court of the United States under the amendatory Judicial Act of March 3d, 1803.†

THE fourth section of an act of Congress of July 1, 1864,‡ "To expedite the settlement of titles to lands in the State of California," provides as follows:

"That whenever the district judge of any one of the District Courts of the United States for California is interested in any land the claim to which, under the said act of March 3, 1851, is pending before him on appeal from the Board of Commissioners created by said act, the said District Court shall order the case to be transferred to the Circuit Court of the United States for California, which court shall thereupon take jurisdiction and determine the same. The said District Courts may also order a transfer, to the said Circuit Court, of any other cases arising under said act pending before them affecting the title to lands within the corporate limits of any city or town; and in such cases both the district and circuit judges may sit."

An appeal pending in the District Court for the Northern District of California from a decree of the Board of Commissioners,—the United States being a party on one side and the City of San Francisco party on the other—was transferred from the District Court to the Circuit under the above section. It was there heard and decided in favor of the city; and the United States, represented by the attorney-general, considering itself aggrieved by the decree, applied in due form to the Circuit Court for an appeal to this court. The application, after full consideration, was denied, on the ground that upon a true construction of the section above quoted no appeal had been provided for.

---

* 9 Stat. at Large, 631.   † 2 Id. 244.   ‡ 13 Id. 338.

The section itself, it will be seen, provides for no appeal.

On a petition by the United States for a mandamus to the judges of the Circuit Court to allow one, the question accordingly was whether under the Constitution and different statutes of the United States any appeal lay.

*Mr. Assistant Attorney-General Ashton and Mr. Black, for the relators and in support of the motion; Mr. W. W. Cope, contra.*

Mr. Justice NELSON delivered the opinion of the court.

The question raised by the present application is a nice one in practice, and is not without its difficulties.

The section itself does not provide for an appeal, and, unless the case is governed by some general law, or established practice of the court derived from acts of Congress, the right of appeal cannot be maintained.

By the 22d section of the Judiciary Act, in connection with the act of March 3, 1803, all judgments and decrees in civil actions, and in suits in equity in a Circuit Court, brought there by original process, or removed there from courts of the several States, or *removed there by appeal from a District Court*, may be re-examined and reversed or affirmed in the Supreme Court. It is said that the present case was not brought into the Circuit by an appeal from the District Court, and hence is not within the provision. The case, as we have seen, comes into the Circuit under the 4th section of the act of 1864, not by appeal, but by an order of the District Court transferring it to the Circuit.

This 4th section was taken from, or part of it, at least, is but a transcript of the 11th section of an act of Congress, passed May 8, 1792. The act provided that in all suits and actions in any District Court of the United States in which it shall appear that the judge is in any way interested, or has been counsel for either party, it shall be his duty to cause the fact to be entered in the minutes of his court, and order an authenticated copy thereof, with all the proceedings in the suit, to the next Circuit Court, which court shall thereupon take cognizance of the case, and hear and deter-

mine the same.  And a similar provision will be found in the act of March 2, 1809,* in case of the disability of the district judge to perform the duties of his office during such disability.  The cases are transferred by the clerk on the order of the circuit judge.  And a like provision is found in the act of March 3, 1821,† in case of the relationship of the judge to either of the parties to the suit.

Now, these acts, as will be seen from their date, have been in force from an early period, and it has never been doubted but that the judgments and decrees rendered in the Circuit Court were subject to be re-examined, reversed, or affirmed by the Supreme Court, as in any other case under the 22d section of the Judiciary Act.  A case was before us at the present term that had been transferred to the Circuit under the act of 1792.

The law providing for the transfer of the case from the District Court to the Circuit, was regarded as enlarging the cases provided for in the 22d section; and virtually incorporated therein a removal by transfer, when thus authorized, to the Circuit, in addition to the cases of removal by appeal as provided for in that section.

It will be observed that this 4th section of the act of 1864 provides for a compulsory transfer only in the case of an interest of the judge in the land in controversy.  But suppose he has been counsel in the cause, or disabled by sickness, or by reason of relationship to either of the parties, this 4th section does not provide for the disability.  The cases were, however, already provided for by the acts of 1792, 1809, and 1821, and they are peremptory, that on application of the counsel of either party, the case shall be transferred to the Circuit Court.  The construction, therefore, contended for, would present the singular inconsistency of a denial of an appeal, in case of the interest of the judge in the subject-matter of the controversy; but its allowance in case of a transfer, when he had been counsel in the cause, or general disability to discharge his duties, or in case of relationship to either of the parties.

* 1 Stat. at Large, 534.                    † 3 Id. 643.

The remaining clause of this section makes it optional with the judge to transfer other causes arising under the act of 1851, affecting the title to lands within the corporate limits of a city or town, and then both judges may sit.

But whether the transfer is optional or compulsory, cannot vary its legal effect. If made at all, it must be by the authority of the 4th section—by the authority of law—the same as in the case of interest of counsel, or general disability of the judge, or from relationship, and falls within the practice applicable to these cases.

This clause is subject to an additional objection; for, as the transfer is optional, and may be granted or not, if the decree or judgment of the Circuit Court is not matter of appeal, or writ of error, whether any appeal be permitted or not in the case, is within the power of the district judge. If he retains the case and determines it, an appeal, it is admitted, lies; if he transfers the case, and the decree or judgment is in the Circuit, it must be denied. We think Congress could hardly have intended this result. It places the right of an appeal not on the judgment of the circuit judge who rendered it, but in the discretion of the judge of the District Court.

It is urged that the proceedings under the act of 1851, concerning California land titles, are special, and are not to be regarded as cases either in law or equity. The law is general, and concerns the title to the whole of the real property of the State. Many of the provisions of this law are taken from the act of May 26, 1824, which provided for the trial of claims under imperfect Spanish and French grants within the State of Missouri before the district judge of that district. These were grants under the protection of the treaty of San Ildefonzo. The proceedings were informal, like those under the act of 1851. The claims were to be determined according to the law of nations, the stipulations of the treaty, the several acts of Congress in relation thereto, the laws and ordinances of the government from which the titles were derived. The proceedings were regarded as in the nature of a proceeding in equity, though the analogy

was not very close, the decision on the claim being in the form of a decree.

The proceedings under the act of 1851, we think, should be regarded in the same light—in the nature of a proceeding in equity. The form of the decision has always been in conformity thereto. An appeal is the appropriate mode of bringing the case up to the appellate court for review, and such has been the uniform practice under the act.

Upon the whole, our conclusion is, that an appeal lies in behalf of the United States.

Mr. Justice FIELD, with whom concurred GRIER and MILLER, JJ., dissenting:

Unable to concur in the opinion of a majority of the court, which has just been read, I will proceed to give the grounds of my dissent.

The Supreme Court, by the Constitution, takes its appellate jurisdiction over cases "with such exceptions, and under such regulations as the Congress shall make." And the designation, by acts of Congress, of the cases to which this jurisdiction shall extend, has uniformly been held to be a legislative declaration that all other cases are excepted from it. Thus in *Wiscart* v. *Dauchy*,* which was decided as early as 1796, the court said, that if Congress had not provided any rule to regulate its proceedings on appeal, it could not exercise an appellate jurisdiction, and, if a rule were provided, the court could not depart from it. And, in *Clarke* v. *Bazadone*,† it was decided that a writ of error did not lie from this court to the General Court for the Territory northwest of the Ohio, because Congress had not by its legislation authorized such writ. It was urged, on the argument, that the judicial power under the Constitution extended to all cases arising under the Constitution and laws of the United States, and to controversies in which the United States were a party; and that the Supreme Court had appellate jurisdiction in all these cases, with such exceptions

---

* 3 Dallas, 327.          † 1 Cranch, 212.

and under such regulations as Congress might make; that Congress had made no exception in that case, which was one arising under the laws of the United States, and no regulation was necessary to give the court the appellate power; that it derived that from the Constitution itself. But the court adhered to its previous ruling, although observing at the same time that from the manifest errors on the face of the record it felt every disposition to support the writ.

In *Durousseau* v. *The United States** the subject was again considered, and the court held, that though its appellate powers were given by the Constitution, they were limited and regulated by the judicial act and such other acts as had been passed on the subject. " When the first legislature of the Union," said Mr. Chief Justice Marshall, in delivering the opinion of the court, " proceeded to carry the third article of the Constitution into effect, they must be understood as intending to execute the power they possessed of making exceptions to the appellate jurisdiction of the Supreme Court. They have not, indeed, made these exceptions in express terms. They have not declared that the appellate power of the court shall not extend to certain cases; but they have described affirmatively its jurisdiction, and its affirmative description has been understood to imply a negative on the exercise of such appellate power as is not comprehended within it." And, in illustration of this principle, reference is made to the provision of the law which allows a writ of error to a judgment of the Circuit Court, where the matter in controversy exceeds the value of two thousand dollars. " There is no express declaration," said the chief justice, " that it will not lie where the matter in controversy shall be of less value. But the court considers this affirmative description as manifesting the intent of the legislature to except from its appellate jurisdiction all cases decided in the circuits where the matter in controversy is of less value, and implies negative words."

---

* 6 Cranch, 307.

It follows, therefore, that the appellate jurisdiction of this court exists only in those cases, in which it is expressly granted. In conformity with this principle it has been held that such jurisdiction does not extend to final judgments in criminal cases, it not having been conferred by Congress. A question arising in a criminal case can only be brought before this court for decision upon a certificate of a division of opinion between the judges of the Circuit Court.* So, under the Judiciary Act of 1789, jurisdiction to review a judgment or decree of the Circuit Court, rendered in an action brought before it from the District Court *on writ of error*, was denied, as the act only mentioned judgments and decrees brought before the Circuit Court *on appeal* from the District Court.†

The act of July 1st, 1864, under which the Circuit Court acquired jurisdiction over this case, makes no provision for an appeal from the decree of the court, or for any re-examination of the decree by the Supreme Court. If an appeal exists it must be found in the amendatory Judicial Act of March 3d, 1803, or in the act of March 3d, 1851, to ascertain and settle private land claims in the State of California.

The Judiciary Act of 1789 only provides for a review upon *a writ of error* of the final judgments and decrees of the Circuit Court where the matter in dispute exceeds the sum or value of two thousand dollars. It is the act of 1803 which extends the appellate power of the court to a review of final judgments and decrees brought up *on appeal* when the matter in dispute is of the like amount or value; and it limits the review to judgments and decrees rendered in " cases of equity, of admiralty, and maritime jurisdiction, and of prize or no prize." Subsequent acts of Congress have reduced the required amount or value of the matter in dispute in some cases—as in suits for the protection of copyrights and patents; but in none of them is there any change in the character of the case in which the judgment or decree of the

---

* Forsyth v. The United States, 9 Howard, 571.
† United States v. Goodwin, 7 Cranch, 108.

Circuit Court can be reviewed on appeal.    Where a review of the action of the Circuit Court upon any other matter is intended, it is authorized by special provision in the act creating the proceeding.

The question, then, upon the act of 1803 is, whether its terms embrace a proceeding taken for the ascertainment and settlement of a claim to land derived from the Spanish or Mexican governments?   Such a proceeding is not a suit in admiralty, of course; nor is it a suit in equity, as those terms are there used.   By those terms is meant a regular proceeding in a court of justice for relief on equitable grounds in contradistinction to an action at law for the enforcement of legal rights—a proceeding which can only be sustained when plain, adequate, and complete remedy cannot be had at law. The act mentions the pleadings by which the suit is to be conducted; it requires a transcript of the bill, answer, and deposition to be transmitted to the Supreme Court on appeal, clearly indicating the nature of the proceeding to which it refers.    The proceeding for the confirmation of a California land claim is of a very different character; is governed by different principles, and supported by different evidence.    It is a proceeding taken under a statute conferring a peculiar and limited jurisdiction, created for the purpose of enabling the government to separate private lands from the public domain, and to discharge its political obligations under the treaty of cession.    It is in the nature of an inquisition of the government, invoked by the petition of the claimant, and governed by the stipulations of the treaty, the law of nations, the laws, usages, and customs of the former government, the principles of equity, and the decisions of the Supreme Court, so far as they are applicable.    Though the principles of equity are to constitute one ground of the decision, the proceeding has nothing in it whatever which will justify its designation as a suit in equity as those terms are used in the act of 1803.

The heads of the different departments are often required by acts or resolutions of Congress to settle claims for losses and liabilities incurred on behalf of the government, or in

the attempted performance of contracts on the principles of equity. Thus, in the case of De Groot, who asserted claims for furnishing materials for the Washington aqueduct, the resolution of Congress directed the Secretary of War to settle the claims " on the principles of justice and equity."* Yet, no one would pretend that the proceeding before the secretary was a suit in equity, as these terms are understood in a legal sense. Nor is an application for a patent, or a proceeding for the assessment of damages, where private property is taken for public purposes, a suit of that nature. Nor would such special proceeding lose its distinctive and special character if by an act of Congress it was made subject to review on appeal by the District Court of the United States. These cases belong to that class of controversies which are properly the subjects of administrative regulation, and do not become converted into suits in equity because judicial agency is brought in to aid the administrative proceeding. They may be submitted to the entire disposition of a board of commissioners without the violation of any principle, just as the California land cases are submitted in the first instance to such board for investigation.

The act of March 3d, 1851, does not provide for any consideration by the Circuit Court of cases of this character. The jurisdiction over these cases is by that act vested, in the first instance, in a board of commissioners, and afterwards, on appeal from the decision of the board, in the District Court. From the decrees of the District Court an appeal lies directly to the Supreme Court. The language of the act is, " that the District Court . . . . . . shall, on application of the party against whom judgment is rendered, grant an appeal to the Supreme Court of the United States."

The act of July 1st, 1864, authorizes a transfer from the District Court to the Circuit Court of cases of this kind, where the district judge is interested in the land, the claim to which is pending before him, and also where the case affects the title to lands within the corporate limits of any

---

* 12 Stat. at Large, 874.

city or town; but it does not confer any right of appeal from the action of the Circuit Court in these cases after they are transferred.    It is contended, however, by counsel, that the right of appeal goes with the transfer of the case.

The argument is, that there is no rule for the decision of the case after it is transferred, unless the provisions of the act of 1851 on this point are considered as governing; and that it is not to be presumed that Congress intended that the right of appeal from the decision should depend upon the contingency of the district judge having an interest in the claim, or the fact that some of the lands involved are situated within the limits of a corporate city.

The answer to the first head of the argument is found in the fact that the rules prescribed by the act of 1851 would govern, independent of their statutory enactment.    Whether a title, alleged to have been acquired under the former government, was in fact thus acquired, and entitled to recognition after a change of sovereignty by the new government, would necessarily depend upon the laws, customs, and usages of the former government, the laws of nations, the stipulations of the treaty by which a change of jurisdiction was effected, and the considerations which should govern a just nation in treating of the property of its newly acquired subjects, as explained by the highest tribunal of the country.

And as to the second head of the argument, it may be suggested that it would be a reasonable position to assume that Congress, in passing the act in question, understood the meaning of the language it used, and recognized the difference between the District and Circuit Courts of the United States, and when it omitted to provide any appeal from the decree of the Circuit Court, it intended that none should exist.    There is no repugnancy between the acts of 1851 and 1864.    Reading them together, it would seem to be clear that Congress intended that when a case was decided by the District Court an appeal should lie; but when decided by the Circuit Court, its decision should be final.    There is nothing singular in a provision of this kind, and if there

were, it is sufficient that such was the will of the legislature. In matters of survey, which oftentimes determine the value of the whole claim, the decision of the Circuit Court is admitted to be final, made so in express terms by the act. Is there any more reason for doubting the disposition of Congress to trust to that court the final settlement of the title, than there is to trust the final settlement of the boundaries of the land when the title is confirmed?

But it is not necessary to rest this matter upon reasons of this nature. The absence of a provision allowing an appeal was not an oversight on the part of Congress. It is evident, from the general language of the act, and the object sought to be accomplished by it, that it was the intention of the legislature to give finality to the action of the Circuit Court?

The act was designed, as its name purports, to *expedite* the settlement of titles to land in the State. Great delays and embarrassments were found to exist in determining the location and boundaries of tracts confirmed after the question of title had been adjudicated. The hearing by the District Court of exceptions to surveys returned by the surveyor-general, interposed by parties possessing or asserting adverse interests, the taking of depositions, the discussion of counsel, and the modifications or new surveys sometimes ordered, necessarily occupied the time usually taken by an ordinary suit at law. Then followed the right of appeal to the Supreme Court from the action of the District Court, not merely by the original contestants to the proceeding, but by third parties intervening, whether adjoining proprietors, purchasers under the original grantee, or persons claiming by pre-emption, settlement, or other right under the United States. To obviate the delays and expense necessarily attending proceedings of this character, particularly as occasioned by the appeal to the Supreme Court, and to relieve that tribunal, burdened by a crowded docket, the act limited its jurisdiction to cases in which appeals were then pending, and vested jurisdiction in the Circuit Court, over cases in which appeals might be subsequently taken

When from the decree of the District Court, approving or correcting the survey, no appeal had been taken, "no appeal," says the act, "to that court shall be allowed, but an appeal may be taken, within twelve months after this act shall take effect, to the Circuit Court of the United States for California, and said court shall proceed to fully determine the matter."

Following these provisions is the section which directs that when the district judge is interested in any land, the claim to which, under the act of March 3d, 1851, is pending before him on appeal from the board of commissioners, the case shall be transferred to the Circuit Court, "which shall thereupon take jurisdiction and determine the same." The act then proceeds as follows: "The said District Courts may also order a transfer to the said Circuit Court of any other cases arising under said act, pending before them, affecting the title to lands within the corporate limits of any city or town, and in such cases both the district and circuit judges may sit."

The answer to the last objection will be more obvious if reference is made to the circumstances under which the act of 1864 was passed, as given in the opinion of the Circuit Court. These circumstances are not referred to for the purpose of controlling the construction of the language of the act, but in answer to suppositions as to the intention of Congress.

At the passage of the act there were only two cases pending in the District Courts of California, with reference to which the authority conferred by the clause in question could be exercised,—the case of the City of San Francisco, and the case of the City of Sonoma, both against the United States. The first case had then been pending in the District Court for over eight years. In the mean time the city had extended in all directions, and interests of vast magnitude had grown up, which demanded that the title to the land upon which the city rested should be, in some way, speedily and finally settled. The land commissioners had adjudged that the claim of the city was valid within certain described

limits.   The United States, through their highest legal officer, had assented to this adjudication, and the principal question on appeal before the District Court was as to the additional quantity claimed over the quantity confirmed.

The case of the City of Sonoma had been likewise pending in the District Court on appeal for over eight years.   In this case the United States had, through the attorney-general, signified their assent to a confirmation of the decree of the board, and the principal question on appeal here was also as to the additional quantity claimed by the city.

It was under these circumstances that the law was passed authorizing a transfer of these cases to the Circuit Court. If an appeal from its action had been intended, no beneficial object would have been accomplished by the transfer, for the same delay would follow an appeal from the Circuit Court as would follow an appeal from the District Court. Nor can any reason, in that view, be assigned for allowing both the district and circuit judges, if they desired, to sit in the hearing of these cases.

The acts of 1792, 1809, and 1821, which authorize a transfer of causes from the District Court to the Circuit Court, where the district judge is interested, or has been counsel in the case, or is disabled from performing the duties of his office, or is related to either of the parties, have no bearing upon the question under consideration.   They do not confer any right of appeal from the action of the Circuit Court after the cases are transferred, or any right to have such action reviewed on writ of error.   Such right, when it exists, depends upon the acts of 1789 and 1803; that is, upon the nature of the case and the amount or value of the matter in controversy; and the latter act, which is the only one relating to appeals, does not cover, as I have endeavored to show, a decree in a proceeding for the settlement of a California land claim, where the right or title is alleged to have been derived from the Spanish or Mexican governments.

### NOTE.

For a short time it seemed possible that the present case might assume an interest beyond that of the point of law involved.   The decree of the Cir-

Note.

cuit Court from which an appeal was prayed, and which was made May 18th, 1865, was one settling the title to a large part of the city of San Francisco; how considerable will be seen from the decree itself, of which the following is the material portion:

"The land of which confirmation is made, is a tract situated within the county of San Francisco, and embracing so much of the extreme upper portion of the peninsula above ordinary high-water mark (as the same existed at the date of the conquest of the country, namely, the 7th of July, A.D. 1846), on which the city of San Francisco is situated, as will contain an area of four square leagues—said tract being bounded on the north and east by the Bay of San Francisco; on the west by the Pacific Ocean; and on the south by a due east and west line, drawn so as to include the area aforesaid, subject to the following deductions, namely: such parcels of land as have been heretofore reserved or dedicated to public uses by the United States; and, also, such parcels of land as have been by grants from lawful authority vested in private proprietorship, and have been finally confirmed to parties claiming under said grants by the tribunals of the United States, or shall hereafter be finally confirmed to parties claiming thereunder by said tribunals, in proceedings now pending therein for that purpose; all of which said excepted parcels of land are included within the area of four square leagues above mentioned, but are excluded from the confirmation to the city. This confirmation is in trust, for the benefit of the lot-holders under grants from the pueblo, town, or city of San Francisco, or other competent authority, and as to any residue, in trust for the use and benefit of the inhabitants of the city."

However, immediately after the expression of the views of the majority of the judges, as given in the preceding case, Congress passed the following act:

*An act to quiet the title to certain lands within the corporate limits of the City of San Francisco.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled:* That all the right and title of the United States to the land situated within the corporate limits of the city of San Francisco, in the State of California, confirmed to the city of San Francisco by the decree of the Circuit Court of the United States for the Northern District of California, entered on the 18th day of May, 1865, be and the same are hereby relinquished and granted to the said city of San Francisco and its successors, and the claim of the said city to said land is hereby confirmed, subject, however, to the reservations and exceptions designated in said decree, and upon the following trusts, namely: that all the said land, not heretofore granted to said city, shall be disposed of and conveyed by said city to parties in the *bonâ fide* actual possession thereof, by themselves or tenants, on the passage of this act, in such quantities and upon such terms and conditions as the legislature of the State of California may prescribe; except such parcels thereof as may be reserved and set apart by ordinance of said city for public uses. *Provided, however,* That the relinquishment and grant, by this act, shall not interfere with or prejudice any valid adverse right or claim, if such exist, to said land or any part thereof, whether derived from Spain, Mexico, or the United States, or preclude a judicial examination and adjustment thereof.

Approved, March 8, 1866.